No. 21,276.

J. C. IRELAND, *Appellant and Appellee,* v. THE LINN COUNTY BANK et al., *Appellees and Appellants.*

SYLLABUS BY THE COURT.

1. EXECUTION—*Indemnifying Bond to Sheriff—Liability of Bondsmen—Evidence.* Where a sheriff has been indemnified against all costs and damages that he may sustain by reason of levying an execution on certain personal property, and judgment is rendered against him for liabilities growing out of the levy, that judgment, in an action brought by the sheriff against his indemnitors, is only *prima facie* evdence that the sheriff has been damaged in the amount named therein, where the sheriff did not notify them of the action against him nor ask them to assist in the defense thereof.

2. SAME—*Duty of Execution Creditor—Instructions to Sheriff.* It is the duty of an execution creditor who has indemnified the sheriff, to give the sheriff instructions as to how he shall proceed, when he asks for such instructions; and when the execution creditor fails or refuses to give such instructions, the sheriff, acting in good faith, may proceed according to his best judgment, and the indemnitor will be liable to the sheriff for the damage afterward sustained by him.

3. SAME—*Sheriff May Sell Property after Return Day.* A sheriff who has, under an execution, levied on personal property, which property remains in his hands on the return day unsold for want of bidders, for want of time to advertise and sell, or for any other reasonable cause, may sell that property after the return day of the execution.

4. SAME—*Elements of Damages Recoverable by Sheriff on Indemnifying Bond.* A sheriff who has been indemnified is entitled to recover reasonable and necessary attorney's fees for the services of an attorney in protecting the sheriff's interests in personal property held under the execution and in resisting actions against him growing out of levying the execution. He is also entitled to recover his mileage fees for the distances necessarily traveled by him in performing his duty under the execution, to recover the fees paid by him for publication of notice of sale of the property under the execution, and to recover the expenses incurred by him in caring for the property.

5. SAME—*Cross Appeal.* The questions presented by the defendants on their cross appeal have been disposed of in the determination of the questions presented by the plaintiffs.

Appeal from Linn district court; CHARLES E. HULETT, judge. Opinion filed November 9, 1918. Reversed.

*John O. Morse,* of Mound City, for the appellant.

*James D. Snoddy,* of Pleasanton, and *W. P. Dillard,* of Fort Scott, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff commenced this action to recover on an indemnity bond given by the defendants to the plaintiff, while he was sheriff, to indemnify him against loss on account of levying an execution on the personal property of T. N. Marshall, the execution debtor. The plaintiff prayed for judgment in the sum of $629.65 and interest. Judgment was rendered in his favor for $170.85. Each side appeals.

On May 23, 1911, defendant the Linn County Bank caused an execution to issue on a judgment rendered by the district court of Linn county in favor of the bank and against T. N. Marshall. The execution was held by the bank until July 20, 1911, when it was delivered to H. D. Callison, undersheriff at La Cygne, the place of residence of T. N. Marshall. An indemnity bond of $5,000 was demanded by the sheriff and was given by the bank. The bond was signed by each of the defendants. The execution was levied on certain personal property, and that property was advertised for sale on July 3, 1911. On June.24, 1911, T. N. Marshall filed his petition in bankruptcy, and on June 30 the referee in bankruptcy ordered that the execution be stayed, and that the bank be restrained from proceeding further thereunder. The property was not sold on July 3, although the bank then demanded of the plaintiff that he hold the property and sell it at once. The plaintiff refused to sell at that time. Part of the property levied on was at Marshall's farm and was not taken away, and part of the property was in the Frisco stockyard at La Cygne. On July 3, the plaintiff turned over to Marshall all the property levied on, to be held subject to the orders of the plaintiff as sheriff. July 22, 1911, was the return day of the execution. On July 24, the plaintiff, without notice to the bank, obtained an order from the judge of the district court at chambers giving the plaintiff until August 15, 1911, in which to return the execution. On July 24, the plaintiff readvertised the property for sale on August 14. On July 29, the referee in bankruptcy ordered the trustee to relinquish certain of the property levied on by the plaintiff. After that property had been released, the plaintiff's attorney asked the bank's attorney what the bank wanted done with the property. The bank's attorney declined to give

any directions, and replied, in effect, that the plaintiff and his attorney had got into the muddle, and that they could get out of it the best way they could. On August 12, 1911, T. N. Marshall presented to the judge of the district court at chambers an affidavit showing that Marshall had, on June 24, been duly adjudged a bankrupt, and the judge ordered that the levy of the execution on the property be set aside and the property be discharged. The property was then released.

Marshall presented to the plaintiff a claim for feed used and services rendered in caring for the property. The plaintiff refused to pay the claim, and Marshall brought an action to recover thereon. The plaintiff did not notify any of the defendants that the action had been commenced and did not request them to defend or assist in the defense therein. A judgment was rendered against the plaintiff for $478.21 and costs. The plaintiff afterward paid that judgment.

The present action is to recover the amount paid on that judgment, to recover attorney's fees in that action, to recover attorney's fees in the bankruptcy proceeding, to recover mileage of the plaintiff on the execution, to recover the cost of the last notice of sale, and to recover $50 for feed used prior to July 3. The bank paid for all the feed used and for the care of the property to July 3, except the $50, and three other items amounting to $19.48. The court rendered judgment in favor of the plaintiff for feed and pasture for nineteen days, and for the items that made up the $19.48. The nineteen days must have been from July 3, the day first advertised for the sale, to July 22, the return day of the execution. The court evidently refused to render judgment for any feed furnished, or services rendered, after July 22. The court also refused to allow anything for attorney's fees, for the plaintiff's mileage, for the publication notice, or for the $50 paid for feed furnished prior to July 3.

1. The first proposition argued by the plaintiff is that the judgment in favor of Marshall was at least *prima facie* evidence that the plaintiff had sustained damages in the amount named in the judgment. That proposition is correct. (*City of Topeka v. Ritchie*, 102 Kan. 384, 170 Pac. 1003; *Train v. Gold*, 22 Mass. 379; *Lee v. Wisner*, 38 Mich. 82; *Stewart v. Thomas, Adm'r of Ball, et al.*, 45 Mo. 42; *French v. Parish*,

Ireland v. Bank.

14 N. H. 496; *Bridgeport Insurance Co. v. Wilson et al.,* 34 N. Y. 275; *Lincoln v. Blanchard,* 17 Vt. 464; 14 R. C. L. 62; Note, 22 Am. St. Rep. 207).

The judgment would have been conclusive evidence if the plaintiff had notified the defendants of the action, or had requested them to defend therein. (14 R. C. L. 61; 22 Cyc. 106; Note, 22 Am. St. Rep. 205; 3 Ency. of Ev. 277).

2. The serious problem is the court's refusal to enter judgment for any item of feed or service that arose after July 22. The plaintiff, as well as the bank, was compelled by the referee's order to stop proceedings under the execution, and neither could proceed until after the referee directed the trustee to release the property. The plaintiff could then proceed only against the property that had been released. When he, through his attorney, asked for instructions as to how to proceed, the bank, through its attorney, refused to give any instruction and told the plaintiff to get out of the difficulty as best he could. The bank should have then given instructions. When it refused, it was bound by what the plaintiff afterward did, so long as he acted in good faith, and it and its sureties must bear the consequences. If the bank did not want to be bound by the acts of the plaintiff, it should have told him what it wanted done.

3. The defendants argue that the plaintiff could not sell the property after the return day, and should have returned the execution on that day. They also argue that the judge at chambers had no power to extend the time for returning the execution. These arguments compel a determination of the power of the sheriff to sell, after the return day of the execution, the property levied on previous to that day.

Section 448 of the code of civil procedure provides that a sheriff may, for his own protection, take security from the execution debtor for the return, to the sheriff, of personal property that remains in his hands unsold for want of bidders, for want of time to advertise and sell, or for any other reasonable cause. Section 450 of the code provides that when a writ shall issue directing the sale of property previously taken in execution, the clerk shall add a command directing the officers to levy upon lands and tenements, under certain conditions. Section 457 provides for the issue of other executions when real prop-

erty has been levied on and not sold. Under these statutes this court has said: ,

"A sheriff cannot legally sell real estate on execution after the return-day of the execution, and more than sixty days after its date and after it was issued." (*Shultz v. Smith*, 17 Kan. 306, syl. ¶ 1.)

This rule has been recognized in *Ritchie v. Higginbotham*, 26 Kan. 645; *Rain v. Young*, 61 Kan. 428, 59 Pac. 1068; *Bank v. Bank*, 61 Kan. 620, 60 Pac. 324; *Norton v. Reardon*, 67 Kan. 302, 72 Pac. 861. These decisions also recognize a writ directing the sale of property previously levied on, and that writ and its effect are discussed at length in *Ritchie v. Higginbotham*. The court there said:

"The object of this writ, so far as it regards personal property, is to force the sheriff to sell when he has returned a levy unsold for want of buyers, and to bring him into contempt for not selling it." (p. 648.)

If the sheriff can be forced to sell under such writ, he certainly has the power to sell without it. In 10 R. C. L. 1295, this language is found:

"As to the right to sell after the return day, there is some conflict. On the one hand it is held that such a sale is void, and that the sheriff and the attorney who directed the sale are liable as trespassers. On the other hand, many courts have recognized the authority of the sheriff to sell the property after the return day, particularly when the levy is made before the return day. Other courts allow a sale of personalty but not of realty after the return day. This distinction is based on the theory that a levy on land, unlike a levy on personalty, vests no right or title in the sheriff, so that he acts under a naked power."

The weight of authority seems to be that the sheriff has power to sell personal property after the return day of his writ, where that property has been levied on before that return day. An exhaustive note on the subject is found in 76 Am. Dec. 83-89. (See, also, Note, 28 Am. St. Rep. 120; 1 Freeman on Executions, 3d ed., § 106; 16 Standard Proc., 179; 17 Cyc. 1242; *Dennis & Strickland v. Chapman, Gov'r, &c.*, 19 Ala. 29; *Cox v. Currier, Sheriff, et al.*, 62 Iowa, 551; *Savings Institution of Harrodsburg v. Chinn's administrator*, 70 Ky. 539; *Sheldon v. The New Orleans Canal and Banking Company*, 11 Rob. [La.] 181; *Labiche, for the use, &c., v. Lewis and others*, 12 Rob. [La.] 8; *Barnard v. Stevens*, 2 Aik. [Vt.] 429.) Under these and other authorities that might be cited, it must be held

Ireland v. Bank.

that the sheriff had the power, after the return day of the execution, to sell the property levied on.

4.  There remain the questions of attorney's fees in resisting the action of Marshall against the plaintiff, of attorney's fees in looking after the rights of the plaintiff to the property that was involved in the bankruptcy proceeding, of the mileage of the plaintiff, of the fee for publishing the last sale notice, and of the $50 paid for feed prior to July 3.

On the question of attorney's fees, in 14 R. C. L. 59, it is said:

"When actions are brought to recover indemnity, either where the right to indemnity is implied by law or arises under a contract, reasonable counsel fees which have been incurred in resisting the claim indemnified against may be recovered as a part of the damages and expenses."

Similar statements are made in 22 Cyc. 89, and 35 Cyc. 1771. Each of these statements is supported by numerous authorities. These statements are unqualified, and, so far as the language given in each of them is concerned, the liability of the indemnitor does not depend upon notice having been given to him by the indemnitee; but in a number of the cases cited the indemnitor had notice, though in a number of the cases there is nothing to indicate that the indemnitor had any notice.  It, therefore, may be argued, that because the defendants were not notified by the plaintiff concerning the action commenced by Marshall, the defendants are not liable for attorney's fee.  The argument is not good.  The plaintiff had the right to defend in the action against him.  That right could not be taken from him by the defendants.  They could join or assist in the defense, but they could not exclude the sheriff from participating therein.  In the following cases the indemnitors participated in the action with the indemnitees, yet the indemnitors were held liable for attorney's fees: *Stewart v. Lapsley,* 7 La. Ann. 641; *Davis v. Smith,* 79 Me. 351; *C. & O. C. Co. v. Co. Comm'rs of Allegany Co.,* 57 Md. 201; *Clarke & another v. Moies,* 11 Gray, 133.

While the solution of the problem presented is not without difficulty, yet the weight of authority, the better reasoning, and the conclusion of the court is that an indemnitee can recover his reasonable and necessary attorney's fees.  The conclusion reached is supported to some extent by *Bank v. Williams,* 62

Kan. 431, 63 Pac. 744; *Bourke v. Spaight,* 80 Kan. 387, 102 Pac. 253; *City of Topeka v. Brooks,* 99 Kan. 643, 164 Pac. 285.

It may have been necessary for the plaintiff to employ an attorney in the bankruptcy proceeding. If it was necessary, he can recover the reasonable attorney's fee paid or promised, but if it was not necessary he cannot recover.

The fee for the public notice should be recovered by the plaintiff, as well as the mileage for the distances necessarily traveled by him in performing his duty under the execution.

The $50 paid for feed furnished prior to July 3, 1911, should be recovered, if it is found that the amount was so paid.

5. On their cross appeal the defendants contend that no judgment whatever should have been rendered against them. What has been said concerning the question presented by the plaintiff disposes of this contention of the defendants.

The judgment is reversed, and a new trial is granted.