352 F.2d 410
 William WAGNER and J. A. Tretheway, Appellants,
v.
FIREMAN'S FUND INSURANCE COMPANY, Flora Construction
Company, Argus Construction Company, Flora
Construction Company and Argus
Construction Company, a joint
venture, and Mildred
L. Flora,
Appellees.
Walter W. FLORA, Appellant,
v.
FIREMAN'S FUND INSURANCE COMPANY, Appellee.
 Nos. 7896, 7923.
 United States Court of Appeals Tenth Circuit.
 Nov. 9, 1965.
 
 Herbert A. Shatz, Denver, Colo., for appellants Wagner and Tretheway.
 Lawrence M. Wood, Denver, Colo., for appellee Fireman's Fund Ins. Co.
 Before MURRAH, Chief Judge, and PICKETT and HILL, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 Appellants Flora Construction Company and Argus Construction Company, Wyoming corporations,[1] prior to May 11, 1959, agreed as a joint venture, to submit a bid to the United States Bureau of Reclamation for a contract to construct the proposed Fremont Canyon power project in Wyoming. The contract was awarded to the joint venture, and under its terms the joint venture was to furnish performance and payment bonds written by a qualified surety company. The joint venture applied to the Fireman's Fund Insurance Company to issue such bonds as surety. The bonds were issued by the company on May 11, 1959, simultaneously with the execution of the contract. Thereafter the joint venture undertook performance of the construction contract under the general supervision of Walter W. Flora. When the project began to encounter difficulty, the bonding company, feeling its position to be insecure, employed engineers and accountants to investigate the progress which was being made toward the completion of the contract. It also retained a firm of attorneys to work with the contractors. The project was completed without any loss to the bonding company except the amounts expended for the engineers, accountants and attorneys. This action was brought by the surety company to recover these amounts from the two corporations and the individual defendants Walter W. Flora, Mildred L. Flora, William Wagner and J. A. Tretheway, who had signed an indemnity agreement by which they undertook to save the surety company harmless against any loss arising out of the issuance of the bonds. The court denied recovery of the amounts expended for the services of the engineers, accountants and certain attorney fees,[2] but awarded judgment against all defendants for those attorney fees considered to be beneficial and necessary to the construction project. Relying on a General Indemnity Agreement, the court also awarded judgment against Flora Construction Company, Walter W. Flora and Mildred L. Flora for an additional $750.00 as attorney fees in this action. Wagner, Tretheway and Flora have appealed.[3]
 
 
 2
 The basis of liability for the judgment against all of the appellants is an indemnity agreement which was furnished to the surety company.[4] This agreement was not executed and delivered until at least two months after the bonds had been delivered. The primary defense was lack of consideration in that the instrument was not a part of the original transaction and was not an inducement for the issuance of the bonds. The trial court found:
 
 
 3
 'That in order to secure the bonds required, the joint venture applied to the plaintiff for such bonds, and, at about the time of the application for the bonds, the applicants, including Flora Construction Company, Argus Construction Company, Walter Flora and Mildred Flora, who were the principal officers and stockholders of Flora Construction Company, and William Wagner and J. A. Tretheway, who were stockholders of Argus Construction Company, agreed to execute an indemnity agreement in their individual capacities.
 
 
 4
 That the two bonds were in fact executed by the plaintiff on or about the 11th day of May, 1959, and subsequent thereto the four individuals previously named executed and delivered to the plaintiff their indemnity agreement, under which they agreed to indemnify the plaintiff for loss or expenses incurred as a result of the writing of the said bonds or in connection with the performance of the said contract.
 
 
 5
 That there was a valuable consideration for the execution of the Indemnity Agreement by the indemnitors in that it was agreed between those persons and the plaintiff that such an indemnity agreement would be executed by those persons if the payment and performance bonds should be executed by the plaintiff.'
 
 
 6
 The parties agree that if the indemnity contract was executed pursuant to an antecedent agreement or understanding that an indemnity agreement would be forthcoming, and as an inducement for the execution of the surety bonds, then the indemnity is a part of the original transaction and supported by the consideration of the principal contract, even though its execution was at a later date. The rule is well-stated in Fidelity & Deposit Co. of Maryland v. O'Bryan, 180 Ky. 277, 281-282, 202 S.W. 645, 646-647, L.R.A.1918E, 574:
 
 
 7
 '* * * the execution of a bond of indemnity subsequent to the execution of the original undertaking will have the same force and effect as if it were executed simultaneously with the original undertaking, if its subsequent execution was pursuant to an arrangement or agreement, between the indemnitee and the indemnitors, at the time or before the indemnitee became bound, that there should be executed to it a bond of indemnity.'
 
 
 8
 See, also, Universal C.I.T. Credit Corp. v. De Lisle, 47 Wash.2d 318, 287 P.2d 302, and cases collected 167 A.L.R. 1174.
 
 
 9
 The effect of appellant's argument is that there is no substantial evidence to support the trial court's findings. During the negotiations representatives of the joint venture were advised that the bonds would not issue unless the principal officers of the two corporations personally agreed to indemnify the surety company against loss. Although Flora carried on the negotiations for the bonds on behalf of the joint venture and agreed that the personal indemnities would be furnished, Wagner and Tretheway, both former employees of Flora, knew what was required to obtain the bonds and that Flora was acting for the two corporations. At Flora's request they furnished the surety with required personal financial statements in which they were referred to as 'indemnitors', and they thereafter signed the indemnity agreement without objection. An agent of the surety company who negotiated the bonding arrangement testified as follows:
 
 
 10
 '* * * As is usual, we required the indemnity of the two corporations, Flora Construction Company and Argus Construction Company, and also required the individual indemnity of the officers of each corporation to support the underwriting for the bid bond and the performance and payment bonds, if the contract was awarded. As I recall, we had, of course, a late financial statement in our files of Flora Construction Company and of Walter and Mildred Flora. I required a statement be submitted to us of Argus Construction Company, with a verification of deposit in their bank of the additional working capital that had been required. I also required the individual statements of the officers of Argus Construction Company to support their indemnity. This personal indemnity of the officers of a corporation, especially a new corporation, and also in cases where the individuals involved in a corporation were the primary interests, was a usual practice based upon the adage that no corporation is any better than the people behind it. Thus, in summary, the requirements were the deposit of additional working capital, the indemnity of each corporation as a corporate entity, and the indemnity of the officers of each corporation, and their wives, if necessary, submission of financial statements of Argus Construction Company with verifications of cash on deposit in their bank, and the submission of financial statements of the officers of Argus Construction Company.'
 
 
 11
 The evidence is adequate to support the finding that the indemnity agreement was contemplated by the original undertaking and did not require new consideration. Cf. Loveland v. Sigel-Campion Live Stock Co., 77 Colo. 22, 234 P. 168, 169.
 
 
 12
 The appellants contend that their liability under the indemnity agreement is limited to obligations which the surety company was required to assume under the bond provisions, and that this did not include expenditures made by the surety company such as those for services of accountants, engineers and attorneys. The trial court held that all expenses incurred in connection with the engineering appraisals and accounting studies, as well as certain legal expenses, were the ordinary 'housekeeping and administrative expenses' of the surety company, and were not recoverable under the indemnity agreement. The court, however, did allow recovery for amounts paid by the surety company to attorneys whose services were performed at the request of and for the benefit of the joint venture. The evidence is without dispute that shortly after the work began on the project the joint venture encountered serious difficulties, both internal and external. Wagner and Tretheway had left the project, and construction was far behind schedule. The necessary supervisory personnel was almost totally lacking. The Bureau of Reclamation had made findings of default and indicated the possibility of terminating the contract. Walter W. Flora made urgent appeals to the surety company for help.[5] Following these requests, the surety company's attorneys investigated conditions on the project, and with the acquiescence of Flora, undertook to remedy what appeared to be a hopeless situation. They not only successfully negotiated with the Bureau for a withdrawal of its findings of default, but also secured an extension for performance, and subsequently other extensions of time. They assisted the joint venture in a case before the National Labor Relations Board, and they helped solve other labor problems in connection with the work. These attorneys were instrumental in obtaining a compromise settlement for the joint venture on a claim for flood damage. They persuaded Wagner and Tretheway to rereturn to the project and assist in muchneeded supervision of the work. They dealt with suppliers who were demanding payment of their accounts. They ably assisted in the disposition of many other pressing difficulties and were, without doubt, directly responsible for the successful completion of the project. All the appellants knew of these services and of their immediate benefit to the joint venture.
 
 
 13
 Regardless of whether the expense incurred for the services of the attorneys is a 'liability' under the terms of the bonds, it is a 'loss' within the broad language of the indemnity agreement, which requires the indemnitors to reimburse the surety for all losses and expenses incurred by reason of having issued the bonds. Appellants rely upon New Amsterdam Casualty Co. v. Terrall, 165 Or. 390, 107 P.2d 843, and National Surety Co. v. Johnson,115 Or. 624, 239 P. 538. We do not, however, construe these cases to compel a different result than reached here. The claims for services in the Oregon cases were for investigative and administrative purposes, the same as those for which the trial court here denied recovery.
 
 
 14
 Appellants assert that the surety company cannot recover for the various legal expenses for the reason that it did not give proper notice that such expenses were being incurred and that they would be chargeable to the appellants as indemnitors. The indemnity agreement does not require notice, but in any event there was adequate notice. All the appellants knew that the services were being performed for the benefit of the joint venture. They were notified by letter from the surety company that they would be required personally to indemnify and reimburse the company for any loss which might arise as a result of having written the bonds.
 
 
 15
 Prior to the execution of the bonds, the two corporations and the Floras signed what is designated as a 'General Indemnity Agreement', which provided that the surety company was to be indemnified against loss on all future bonds written for the indemnitors.[6] Although the court denied recovery of attorney fees incurred in this action under the 'Application for Performance and Payment Bonds and Indemnity Agreement', it did award additional judgment for $750.00 against the Floras and their corporation on the General Indemnity Agreement. The surety company argues that the broad language of the indemnifying clause in the General Indemnity Agreement permits recovery of attorney fees expended in bringing an action on the instrument as it is an expense 'in recovering or attempting to recover losses or expenses paid * * *.' It is clear that the first part of this long and involved sentence is intended to provide indemnity to the surety company for expenses arising out of issuing the bonds, including attorney fees incurred in disposing of claims against the bonds. But the instrument does not expressly by its terms provide for the allowance of attorney fees expended in recovering on the Indemnity Agreements. The instrument is one of the printed forms prepared by the surety company; it obviously is not a true negotiated contract. The surety company's argument illustrates the uncertainty and doubtful meaning of its provision relating to the recovery of attorney fees for an action upon the instrument. In such cases the indemnitor is entitled to have the instrument strictly construed against the indemnitee. 'It is a general rule of construction that where a contract is ambiguous, it will be construed most strongly against the party preparing it or employing the words concerning which the doubt arises.' Moorman Mfg. Co. v. Rivera, Colo., 395 P.2d 4, 6. See, also, Webber v. Satriano, 153 Colo. 138, 384 P.2d 924; Lembke Plmg. and Heating v. Hayutin, 148 Colo. 334, 366 P.2d 673; Gardner v. City of Englewood, 131 Colo. 210, 282 P.2d 1084.
 
 
 16
 We have considered other assignments of error presented by the appellants and find none of them to be prejudicial.
 
 
 17
 The judgment of $750.00 for attorney fees against Walter W. Flora is reversed; otherwise the judgment is affirmed.
 
 
 
 [1]
 Walter W. Flora and Mildred L. Flora were the principal stockholders and officers of Flora Construction Company; William Wagner and J. A. Tretheway were the officers of Argus Construction Company
 
 
 [2]
 No cross-appeal was taken from this portion of the judgment
 
 
 [3]
 Walter W. Flora appeals separately, but both appeals are on the same record and will be disposed of together
 
 
 [4]
 This instrument was designated an 'Application for Performance and Payment Bonds and Indemnity Agreement', the critical paragraph of which provides:
 'Second: Subject to the limitations hereinafter named, the undersigned, Flora Construction Co., Argus Construction Co., Walter Flora, Mildred L. Flora, William Wagner, and J. A. Tretheway by these presents do hereby jointly, severally and unconditionally agree to indemnify and reimburse the Sureties and each of them from and against any and all loss, costs, damages, expenses and attorneys' fees, and any and all liability arising, resulting, sustained or incurred, or which can or may arise, result from or be sustained or incurred by said Sureties, or any of them, by reason having executed said bonds, or any bond or bonds required by said applicants and given by said Sureties, or any of them, in connection with the performance of said contract, or in making any investigations on account of any obligations incurred under said bonds, or any of them, or any claim made or threatened in connection therewith, or in prosecuting or defending any action brought in connection therewith, or in obtaining any and all releases, or in enforcing any of the agreements herein contained with refence to said bonds.'
 
 
 [5]
 On February 24, 1960, Flora wrote a letter to the Surety Company in the nature of an 'S.O.S.' for help. It contained these statements:
 'It is in connection with personnel that we are writing you, in the hope that we may be able to solicit your aid. We have contacted our friends and acquaintances in the construction business for some possible leads for supervisory personnel, and all that they have come up with are either busy, involved in other work-- or settled down some place and more or less retired from the construction industry into less strenuous jobs. * * *
 We hope that you will interpret this letter as an urgent plea from us that you may be able to see the advantage of your making inquiries for us through your various contacts in order that we might have some supervisory personnel offered that might be available and from whom we could make a selection.'
 
 
 [6]
 The agreement contains this clause:
 'The Indemnitors will indemnify the Surety against any and all liability, loss, costs, damages, fees of attorneys and other expenses which the Surety may sustain or incur in consequence of the execution of such bonds and any renewal or successor thereof, including but not limited to, sums paid or liabilities incurred in settlement of, and expenses paid or incurred in connection with claims, suits, or judgments under any such bonds, expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.'