Floyd H. DOYLE, Plaintiff,

v.

MISSOURI VALLEY CONSTRUCTORS, INC., a Delaware corporation, Defendant and Third-Party Plaintiff,

v.

WALTER FLANAGAN AND COMPANY, a Colorado corporation, Third-Party Defendant.

Civ. A. No. 67–C–464.

United States District Court
D. Colorado.

Aug. 19, 1968.

**126**

McCarthy & Reneau, Denver, Colo., for plaintiff.

Kenneth C. Groves, Denver, Colo., for defendant and third-party plaintiff.

Sheldon, Nordmark & Bayer, Denver, Colo., for third-party defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

The above case was tried to the Court on July 31, 1968. It was then determined that the plaintiff, an employee of third party defendant, was entitled to recover against the defendant Missouri Valley Constructors as a result of an injury incurred on a construction job. It was also determined that the negligence of an employee of Missouri Valley had caused plaintiff's personal injury. Plaintiff had obtained workmen's compensation through his employer Flanagan, and had then filed the present action seeking supplemental damages. Missouri Valley in turn filed a third party complaint against Flanagan seeking indemnity. The validity of this claim is now presented for determination.

No factual dispute remains. Whether third party plaintiff Missouri Valley can recover depends entirely on construction of the contract of indemnity. This is evidenced by a so-called purchase order printed by Missouri Valley and submitted to Walt Flanagan. This purchase order is a standard one page form, the face of which describes the goods, names the seller, sets forth the price and method of delivery. A further provision on the face of the purchase order states that in accepting the purchase order the seller agrees to the terms and conditions set forth on the reverse side. The indemnity provision is one of a number of small print provisions found on the back side. It states:

"14. In the event this purchase order requires the performance of installation or other work by the Seller upon any property or project of Purchaser or Owner the following conditions shall also be applicable:

\*     \*     \*     \*     \*     \*

(b) Seller will indemnify, defend and hold harmless Purchaser and Owner from and against any and all losses, damages, liabilities and claims of any kind which may arise out of or in connection with the performance of this purchase order, including but not limited to claims for damage to property and for injury to persons, including death."

Although Walt Flanagan did not sign this document, we must assume that it is a contract since Flanagan did deliver the goods purchased pursuant to it. It is, though, of doubtful applicability. Flanagan asserts that, first, it does not by its terms apply to the facts of this case, and, secondly, in the absence of an express undertaking to indemnify for the sole negligence of Missouri Valley— the law will refuse on the basis of general language to read such a stipulation into it.

The first question is then whether under the terms of the contract Flanagan is required to indemnify. This depends on whether it can be said that Flanagan was engaged in the performance of "installation" or "other work" on Missouri Valley's property.

The contract called for Flanagan to batch and mix the concrete at the Flana-

gan plant and to deliver it to the job site in a ready-mix truck. When the concrete truck arrived at the job site, the superintendent would direct it to the area where the concrete was being poured into forms previously prepared by Missouri Valley, and an employee of Missouri Valley would show the driver the specific place for depositing the concrete. The driver would arrange the chute so as to place the concrete where he was told to place it and that was the extent of "work" performed by him. It seems clear that these facts do not show the performance of installation. All of the installing occurred after the delivery and was performed by employees of Missouri Valley.

The question remains whether Flanagan employees were performing "other work" at the job site. Describing the work of Flanagan in a wholly different context, we said in a previous Memorandum Opinion and Order:

> "Flanagan and Company * * * did not send its men onto the contractor's premises for the purpose of doing substantial construction work. Rather, like many other suppliers, it mixed and batched its materials at its own plant, and sent its employees onto the principal's premises for the sole purpose of delivering the goods. These facts do not show a relationship of prime contractor and subcontractor, but merely one of purchaser and seller." *Memorandum Opinion and Order of August 5, 1968*, D.C., 288 F.Supp. 121, page 125.

It is to be recalled that the Missouri Valley employee, Dallas Decker, who caused this trouble, unexpectedly shifted the chute attached to the cement truck just as the plaintiff here was about to detach and align it, and as a result of this negligence on the part of Decker the plaintiff's hand was crushed. Plaintiff was not actually performing "other work." He was preparing, however, to deposit the concrete at the selected place, and the question is whether this activity, which was admittedly the obligation of Flanagan, constituted the performance of "other work." We note in passing that these words, having been inserted by Missouri Valley in its contract and having a doubtful meaning, must be interpreted most strongly against it.[1] Consistent with the view we have previously taken, we conclude that the activity of plaintiff was part of the Flanagan delivery routine and did not involve the performance of work at the site. We hold that the term "other work" contemplates something more substantial than that which was being done by plaintiff.

There is an additional reason for concluding that the indemnity provision is inapplicable to the present fact situation. That reason arises from the fact that the injuries were the result of the sole negligence of Dallas Decker, an employee of Missouri Valley. Missouri Valley contends, of course, that the contract is sufficiently broad to cover losses and liabilities arising from its sole negligence. The principle which Flanagan invokes is that an undertaking to indemnify will not be enforced where the plaintiff seeks indemnity growing out of its own negligence unless the contract expressly covers negligent conduct. See 175 A.L.R. p. 30, § 17, note 11. There is indeed a disinclination on the part of courts to find from general language an intent to include the sole negligence of the indemnitee. There are in fact several decisions of the Tenth Circuit which support the principle that a contract of indemnity will not be construed to indemnify a person against his own negligence based on nonspecific language. Sinclair Oil & Gas Co. v. Brown, 333 F. 2d 967 (10th Cir. 1964); Mohawk Drilling Co. v. McCullough Tool Co., 271 F.2d 627, 632 (10th Cir. 1959); Sinclair Prairie Oil Co. v. Thornley, 127 F.2d 128, 133 (10th Cir. 1942); Annot., 175

---

1. Wagner v. Fireman's Fund Insurance Co., 352 F.2d 410 (10th Cir. 1965); Christmas v. Cooley, 158 Colo. 297, 406 P.2d 333 (1965); Moorman Manufacturing Co. v. Rivera, 155 Colo. 413, 395 P. 2d 4 (1964).

A.L.R. §§ 17, 18, 68 pp. 144–149 & nn. 8–20 (1948); 42 C.J.S. Indemnity § 12, pp. 580 and n. 83, 583 and n. 10 (1944); 27 Am.Jur. Indemnity § 15 (1940).

The language of the indemnity provision in the case at bar is unquestionably broad enough to generally include negligence (and everything else). It does not, however, evidence an intent of the parties to include negligence and this deficiency renders the contract an insufficient indemnity basis. In Sinclair Oil & Gas Co. v. Brown, supra, Sinclair had entered into a drilling contract and under the terms of it Brown agreed to drill a well for it. The printed contract form supplied by Sinclair contained a provision not unlike the present one. Brown agreed

"(1) * * * to hold Company (Sinclair) harmless from any and all liability for damages to the person * * * of any and all persons resulting from the operations of Contractor hereunder, * * *." 333 F. 2d at 968.

The injured person was an employee of Brown and it was Sinclair's sole negligence which produced the injury. However, the Court of Appeals' holding was that since the language of the agreement did not express an intent that Brown would be liable for Sinclair's negligence, the provision did not apply. The Court of Appeals said:

"We are of the opinion that the language of the indemnity agreement in the instant case does not clearly manifest an intent on the part of the parties thereto that Brown should be liable for damages suffered by Sinclair as the result of and proximately caused by its own negligence." 333 F.2d at 969.

■ While the Court of Appeals was applying Texas law to the effect that it must clearly appear that the parties to an indemnity agreement intended that the indemnitor would be liable for the sole negligence of the indemnitee before such effect would be given to the contract, our search would indicate that

this is the general law, and although there is not a specific Colorado pronouncement, it seems likely that the Colorado Supreme Court would follow this reasonable principle.

■ It follows that plaintiff is not entitled to recover under the indemnity contract here in question. The third party complaint is therefore dismissed, and the Clerk is directed to enter judgment on the said complaint in favor of the third party defendant Flanagan and against third party plaintiff Missouri Valley.