No. 13233

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

CAPITAL HILL SHOPPING CENTER
ASSOCIATES, a limited partnership,

>               Defendant and Third-Party
>               Plaintiff and Appellant,

-vs-

W. R. MILES, JR.,

>               Third-Party Defendant,
>               and **Respondent.**

---

Appeal from:   District Court of the First Judicial District,
               Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

    For Appellant:

        Loble, Picotte, Pauly, Helena, Montana
        Lester Loble, II argued, Helena, Montana

    For Respondent:

        Mahan and Strope, Helena, Montana
        Thomas H. Mahan argued, Helena, Montana

---

>               Submitted:   January 18, 1977
>
>               Decided SEP 8 1977

Filed: SEP 8 1977

Thomas J. Kearney
Clerk

Hon. Harold W. Coder, Jr., district judge, delivered the Opinion of the Court.

This Court is asked to review a determination by the district court, Lewis and Clark County, denying liability of seller for attorney fees incurred by the purchaser of a shopping center in defense of a claim by a tenant asserting an exclusive lease.

The facts, or so much of them as are necessary to satisfy this inquiry are:

Third party defendant and respondent W. R. Miles, Jr. (Miles) promoted and developed the Capital Hill Shopping Center in Helena and in 1964 leased space to W. A. Brown, Jr. (Brown), for the operation of a card and gift shop. The lease was renewed in 1970 for a five year term. During Brown's tenancy he requested and received from Miles an oral agreement that during the life of this tenancy, Brown would have the only card and gift shop in the center.

In June 1971, Miles sold the center to appellant, Capital Hill Shopping Center Associates for $1.6 million and an additional $150,000 to serve as a consultant to Capital Hill for a period of 5 years.

The contract for sale executed by Miles, as seller, and Capital Hill, as buyer contained, inter alia, the following:

"4. Warranties. Seller represents and warrants as to the following, which warranties shall survive the closing hereunder * * *:

"* * *

"4.10 * * * There are no facts in existence on the date hereof and known to the Seller which might reasonably serve as a basis for any material liabilities or obligations not disclosed in this agreement or in exhibits hereto.

- 2 -

"* * *

"4.13 No representations or warranties by Seller in this agreement or any document, statement, certificate or schedule furnished or to be furnished to the Buyer pursuant hereto or in connection with the transactions contemplated hereby, contain or will contain any untrue statements of a material fact or will omit to state a material fact necessary to make the statements or facts contained therein not misleading. Except as is expressly herein otherwise provided, the representations and warranties of the Seller as set forth in this agreement shall be true on and as of the date hereof and the closing date as though such representations and warranties were made on and as of each such time.

"* * *

"5.  Indemnification.  The Seller agrees to and shall indemnify the Buyer, its successors and assigns, in respect of each of the following matters, which indemnification shall be in addition to any other rights of Buyer hereunder:

"* * *

"5.2 Any damage or deficiency resulting from any misrepresentation, a breach of warranty, or nonfulfillment of any agreement on the part of the Seller under this agreement, or from any misrepresentation in or omission from any instrument furnished or to be furnished to the Buyer hereunder or in any exhibit to this agreement, except that such idemnification under this subparagraph shall not exceed the greater of the total amount owed to Seller pursuant to this agreement at the date of notice to Seller of such damage or deficiency.

"5.3 All costs and expenses relative to any actions, suits, proceedings, demands, assessments or judgment incident to any of the foregoing, including reasonable attorney's fees.

"* * *

"8.  Possession; Closing.

"* * *

"8.4 When all such prorations have been made or agreed upon, the parties shall complete the closing of the sale transaction by delivering:

"(a)  To the Buyer

"* * *

- 3 -

"(ii)  All leases, subleases or other documents respecting the Shopping Center.

"  *  *  *

"(v)  All other agreements and leases or subleases affecting the Shopping Center (or copies of the same certified by Seller or the holder thereof)."

Subsequently, Capital Hill cancelled an existing lease and on July 30, 1972 executed a prelease agreement with a party named Hatch's for the purpose of opening a card and gift shop.

Whereupon Brown notified Capital Hill orally, and later in writing, that he possessed an "exclusive" lease. Notwithstanding such notice, Capital Hill proceeded under its prelease agreement and finalized its lease with Hatch's on August 15, 1972.

Brown then sued Capital Hill; Capital Hill, in turn, tendered the defense to Miles, which tender was refused. Capital Hill then joined Miles as third party defendant.

Before trial, the issues raised by Capital Hill's third party pleadings were severed by stipulation, and the jury then returned a verdict in favor of Capital Hill against Brown.

Thereafter, by bench trial, the issues involving Miles' liability to Capital Hill were resolved in favor of Miles. The trial court found:  (1) "Miles advised Brown that he, (Brown) would, at and during the time he was a tenant, have the only card and gift shop in the center. Brown believed that he had an exclusive to the only card and gift store based upon the conversation with Miles", and (2) "At the time of the negotiations for sale to Capital, Miles represented that there were no restrictive clauses in Brown's lease. Capital understood at that time, and up to the time Brown informed Capital that he had an exclusive, that there was no exclusive in Brown's lease."

- 4 -

Respondent Miles in support of the trial court's determination, argues:

a) That the oral agreement between Miles and Brown was not enforceable against Capital Hill, because the jury said so; that, given its validity between Miles and Brown, the oral agreement terminated upon the sale by Miles of the center to Capital Hill; therefore, without an enforceable exclusive right there was no violation by Miles of the indemnity agreement;

b) That such exclusive right is void under the statute of frauds since it was not reduced to writing;

c) Assuming that Miles' failure to disclose violated the indemnity agreement, his liability was cancelled by Brown's notice to Capital Hill one year after the sale, and that Capital Hill, therefore, was responsible for its own damages inasmuch it could have avoided the suit by leasing to someone other than a card or gift shop, thus avoiding any conflict with Brown's interest.

The vice of this rationale, as we view it, is that the oral agreement is declared to be dead for the purpose of relieving Miles of his liability as an indemnitor, but must immediately thereafter be resurrected to support the proposition that Capital Hill must avoid it by leasing to some one other than a card and gift shop.

Thus, what we have is an obligation on the part of Capital Hill to litigate the validity of a verbal agreement to which it was not a party; the outcome served to strip Capital Hill, as the victor, of its warranties and indemnifications for which it had bargained under its sale agreement.

- 5 -

Capital Hill argues that Miles' failure to disclose to it, during the sale negotiations, the existence of the oral agreement between he/and Brown regarding the exclusive nature of Brown's lease was violative of the warranty provisions of their sale agreement; that Miles' failure to accept the tender of defense of Brown's suit against it constituted a breach by Miles of his duty to indemnify; and the notice by Brown to Capital Hill one year after the sale did not cure Miles' defalcations.

We agree.

Initially, we believe the existence of the oral agreement between Miles and Brown was a fact of sufficient materiality to require disclosure to Capital Hill during the sale negotiations and the failure of Miles to do so was an omission within the purview of the warranty provisions set out above.

Unquestionably, had the fact of this agreement been known to Capital Hill at the time of the negotiations, its existence would have weighed heavily upon Capital Hill's determinations to enter into the purchase and its nondisclosure served no interest other than that of Miles. The warranty and indemnity provisions were in that agreement to protect the buyer from the very thing that came to pass---the assertion of a claim by a third party against the buyer, which claim draws its sustenance from an unwritten and unrecorded agreement between such third party and the seller.

A covenant of warranty is for the purpose of indemnifying the purchaser against a loss or injury he may sustain by reason of a defect in the vendor's title. Davis v. Andrews, (Texas Ct. of Appeals 1962), 361 S.W.2d 419. This is, we think, expressive

- 6 -

of the general rule. Fagan v. Walters, 115 Wash. 454, 197
P. 635 (1921); Jones v. Grow Investment and Mortgage Co., 11
Utah 2d 326, 358 P.2d 909, 911 (1961); Matlock v. Wheeler,
(Okla. 1957), 306 P.2d 325; Newmyer v. Roush, 21 Idaho 106, 120
P. 464 (1912); Reinhardt v. Meyer, 153 Colo. 296, 385 P.2d 597
(1963).

Nor do we believe that Brown's notice to Capital Hill of
his purported exclusive lease, coming, as it did, some thirteen
months after the sale by Miles to Capital Hill could effectively
relieve Miles of his liabilities under the express warranty
and indemnity provisions of the sale agreement.

For whatever else may be said of Brown's communication,
it is sufficient to observe that, as a notice, it came too late.

Nor do we believe the indemnity language set out above,
can be construed to mean anything other than what it plainly
sets out.

Brown's suit against Capital Hill was for the enforcement
of some right which arose under an alleged agreement between
Brown and Miles. As an indemnitor under the sales agreement,
Miles' liability to Capital Hill arose at the time of the
execution of that agreement, and no subsequent notice, or communi-
cation by Brown to Capital Hill would serve to vitiate that
liability.

At the time of Brown's suit against Capital Hill, and the
tender of defense by Capital Hill to Miles, Miles' obligation
arose to defend Capital Hill's title against such claim. As an
indemnitor, Miles was not entitled, as a matter of subjective
judgment, to make a determination that Brown's claim was without
merit; nor was he entitled at that time to make an independent

- 7 -

determination regarding his liability to Capital Hill, as an indemnitor under the terms of the sales agreement. Left in its present stance, this case would have Capital Hill indemnifying Miles notwithstanding the express contractual liabilities of Miles for which Capital Hill bargained and paid consideration.

In view of the explicit tender of the defense by Capital Hill and its rejection by Miles, and the subsequent third party pleading, we need not consider notice, if any, which would be required to raise Miles' liability as an indemnitor. Ireland v. Linn County Bank, 103 Kan. 618, 176 P. 103, 2 ALR 184 (1918); Miller v. New York Oil Co., 34 Wyo. 272, 243 P. 118 (1926); Boston and Maine Railroad v. Bethlehem Steel, 311 F.2d 847, 849 (1963); Henderson Realty v. Mesa Paving Company, 27 Ariz. App. 299, 554 P.2d 895, 897 (1976).

Nor need we be concerned regarding the validity of contracts for indemnification; and that they are to be "liberally construed in favor of the party intended to be indemnified." Lesofski v. Ravalli Co. Electric Coop., 151 Mont. 104, 107, 439 P.2d 370 (1968), and authorities cited therein.

The decision of the district court is reversed and dismissed.

Hon. Harold W. Coder, Jr. District
Judge, sitting for Mr. Justice
John Conway Harrison.

- 8 -

We Concur:

_Paul G. Harrison_
Chief Justice

_Frank I. Haswell_

_Gene B. Daly_

_Daniel J. Shea_
Justices.

IN THE SUPREME COURT OF THE STATE OF MONTANA

---

No. 13233

---

CAPITAL HILL SHOPPING CENTER,
ASSOCIATES, a limited partnership,

> Defendant and Third-Party
> Plaintiff and Appellant,

vs.

W. R. MILES, JR.,

> Third-Party Defendant,
> and Respondent.

FILED

OCT - 3 1977

*Thomas J. Kearney*

CLERK OF SUPREME COURT
STATE OF MONTANA

---

O R D E R

---

IT IS ORDERED that the last sentence of the above named opinion is deleted and the following paragraph inserted in its place:

> "The decision of the district court is reversed and the cause remanded to the district court for the determination of a reasonable attorneys fee for purchaser's attorney to be paid by seller and entry of judgment thereon."

DATED this 28th day of September, 1977.

_____
Hon. Harold W. Coder, District
Judge, sitting in place of Mr.
Justice John Conway Harrison.

_____

_____

_____
Justices