**In re Adolph DVORAK, Debtor.**

**Bankruptcy No. 92–10504.**

United States Bankruptcy Court,
D. Kansas.

Dec. 19, 1994.

Order Allowing Attorneys' Fees
Jan. 31, 1995.

Oneil Davis, Wichita, KS, for debtor.

Lynn D. Allison, Trustee, Wichita, KS.

J. Scott Pohl, Wichita, KS, for State Farm.

## MEMORANDUM OPINION AND ORDER

JULIE A. ROBINSON, Bankruptcy Judge.

This matter comes before the Court pursuant to the trustee's objection to Amended Claim # 5 of State Farm Fire & Casualty Company. A pretrial conference was held on May 9, 1994, and upon the subsequent filing of stipulations and briefs the Court took the matter under advisement. Adolph Dvorak ("debtor") appears by and through his attorney, Oneil Davis. The trustee, Lynn D. Allison ("trustee"), appears pro se. State Farm Fire & Casualty Company ("State Farm") appears by and through its attorney, J. Scott Pohl.

### JURISDICTION

The Court has jurisdiction over this proceeding. 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(B).

### FINDINGS OF FACT

Based on the stipulations filed by the parties, the Court finds as follows:

On May 24, 1989, the debtor was granted Letters of Guardianship and Conservatorship in In The Matter Of The Guardianship And Conservatorship of Wesley Dvorak, in the Eighteenth Judicial District Court of Sedgwick County, Kansas. The debtor submitted an application to State Farm for purposes of obtaining a surety bond. In the application, the debtor agreed to indemnify State Farm against any and all liability, claims or losses, including reasonable attorney's fees which State Farm may sustain as a result of having become a surety on the bond to be issued.[1] On May 11, 1989, State Farm issued a surety bond of guardian and conservator, providing that to the extent the debtor became liable in his capacity as guardian and conservator of Wesley Dvorak, State Farm would be princi-

---

1. Adolph Dvorak agreed:
 to indemnify and save the Company harmless from and against all liability, claims, losses, costs, damages, suits, charges and expenses of whatsoever kind and nature, including reasonable attorneys fees, which the Company shall at any time sustain or incur, for or by reason or in consequence of the Company having become surety on any such bond(s) or any modification, renewal or continuation thereof, or new bond(s) substituted therefor.

pally bound and pay jointly and severally on said debt.

On December 22, 1989, Frank J. Dvorak, Sr. filed a petition challenging the debtor's appointment as guardian and conservator of Wesley Dvorak. The debtor retained an attorney, Paul Arabia, to defend himself against Frank Dvorak's petition. After a hearing in May, 1990, the judge removed the debtor as guardian and conservator. Subsequently, the debtor filed an accounting and petition for allowance of attorney's fees in the amount of $31,695 and expenses of $862.72. The debtor had previously paid $32,921.17 in fees and expenses to Paul Arabia without prior approval by the court. The probate court ordered the debtor to reimburse the Estate of Wesley Dvorak the sum of $25,884.17, but the debtor refused. State Farm, as the surety on the bond, then became obligated to pay to the estate the sums which Adolph Dvorak owed, and did pay such claim.

State Farm filed an adversary proceeding in debtor's bankruptcy case, seeking to determine that the debt owed by the debtor pursuant to his application for surety bond, was nondischargeable pursuant to 11 U.S.C. § 523(a)(4). The Court granted State Farm's motion for summary judgment, finding the debt nondischargeable.

As a result of necessary litigation associated with the debtor's failure to comply with his obligations undertaken as conservator and guardian in the state court matter and associated expenses which State Farm incurred in seeking to recoup those expenses and the bond loss, State Farm filed an amended proof of claim in the amount of $45,176.29, which included $17,246.12 in attorney's fees. As a result of a subsequent settlement between Paul Arabia and State Farm, State Farm filed a third amended proof of claim, reducing its claim by $21,986.47, the amount received from Paul Arabia. Thus, State Farm's current proof of claim is in the amount of $23,189.82. The

trustee filed an objection to that part of the claim representing the attorney's fees, $17,246.12, but did not object to the balance of the claim, $3,897.70, plus prepetition interest of $2,046, for a total of $5,943.70.

## CONCLUSIONS OF LAW

The question presented in this case is whether attorney's fees incurred by an indemnitee are an allowable component of an unsecured claim filed by the indemnitee in the indemnitor's bankruptcy case. Section 502(b)(1) of the Bankruptcy Code provides that the court shall allow a claim except to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). The trustee objects that the attorney's fees claimed by State Farm are not allowable under applicable law.

The enforceability of an attorney's fee clause in an agreement concerning realty or personalty is governed by K.S.A. 58-2312, which states in pertinent part:

> Hereafter it shall be unlawful for any person or persons, company, corporation or bank, to contract for the payment of attorney's fees in any note, bill of exchange, bond or mortgage; and any such contract or stipulation for the payment of attorney's fees shall be null and void; and that hereafter no court in this state shall render any judgment, order or decree by which any attorney's fees shall be allowed or charged to the maker of any **promissory note, bill of exchange, bond, mortgage, or other evidence of indebtedness** by way of fees, expenses, costs or otherwise.... [2]

K.S.A. 58-2312 (emphasis added).

The trustee contends that the indemnity agreement constitutes a "note" or "evidence of indebtedness" between the debtor and State Farm, relying on *In re Woerner*, 19

---

2. The indemnity agreement at issue was entered into before K.S.A. 58-2312 was amended to allow recovery of attorney's fees. Senate Bill No. 564, which was enacted on April 25, 1994, amends K.S.A. 58-2312 by taking out the prohibition against recovery of attorney's fees. The

Act takes effect from and after its publication in the statute book. The parties make no argument that the agreement at issue is governed by the Uniform Consumer Credit Code or any other Kansas statute.

B.R. 708, 712 (Bankr.D.Kan.1982), where the court held that attorney's fees were precluded by K.S.A. 58–2312, because an indemnity agreement constitutes a "note" or "evidence of indebtedness."

■ An indemnity agreement is materially different from a guaranty agreement. An indemnity agreement is a separate and distinct agreement between an indemnitor and an indemnitee. 41 Am.Jur.2d *Indemnity* § 4 (1968). In a guaranty agreement, the guarantor is liable for the contractual debts or default of the obligor. The guarantor promises to pay the obligor's creditor. The guarantor makes this promise directly to the obligor's creditor, not to the obligor. In an indemnity agreement, the indemnitor promises the indemnitee to make the indemnitee whole for any damage or loss suffered by the indemnitee, on the indemnitor's behalf. There is no privity between the indemnitee and the indemnitor's creditor; no promise flows between the indemnitee and the indemnitor's creditor. The promise flows between only the indemnitor and indemnitee.

■ There is a similar distinction between an indemnity agreement and a surety agreement. A surety promises to pay a third party on behalf of the principal. The promise flows to the third party. In an indemnity, the promise flows between the indemnitor and indemnitee, not to any third party or creditor of the indemnitor. *Id.*

■ Given that an indemnity agreement is strictly between indemnitee and indemnitor, is it a "note" or "evidence of indebtedness" as between those two parties? In construing K.S.A. 58–2312, this Court is bound by the state court's interpretation of its own statute, but only if the interpretation is made by the state's highest court. *In re White Hat Feed, Inc.*, 67 B.R. 851, 854 (Bankr. D.Kan.1986) (citing *King v. Order of United Commercial Travelers*, 333 U.S. 153, 160–61, 68 S.Ct. 488, 492, 92 L.Ed. 608 (1948)). State appellate court decisions are not to be disregarded, however, unless this Court is con-

vinced that the highest court of the state would decide otherwise. *Id.* While this issue is not squarely addressed in any reported decision, courts have assumed that attorney's fees pursuant to an indemnity agreement are allowable, and based on that premise, have determined the scope of the attorney's fees to be awarded.

In *Ireland v. Linn County Bank*, 103 Kan. 618, 623, 176 P. 103 (1918), the court did not address the allowability of attorney's fees in light of K.S.A. 58–2312, but found that attorney's fees incurred by the indemnitee in resisting or defending the claim indemnified against were recoverable.[3] Similarly, in *Chetopa State Bancshares, Inc. v. Fox*, 6 Kan. App.2d 326, 628 P.2d 249 (1981), the court determined whether the indemnity agreement at issue should be construed to recover not only attorney's fees incurred in defending the indemnified claim, but also attorney's fees the indemnitee incurred in then seeking enforcement of the indemnity agreement against the indemnitor. Again, the court's holding must have been premised on a determination that attorney's fees clauses in indemnity agreements are otherwise enforceable under the laws of Kansas. *See also Iola State Bank v. Biggs*, 233 Kan. 450, 462–63, 662 P.2d 563 (1983) (holding that an attorney fee clause in a guaranty agreement was unenforceable under K.S.A. 58–2312, distinguishing *Chetopa* because it involved an indemnity agreement, rather than a guaranty or surety agreement).

Federal courts have also focused on the scope of the attorney's fee clause in the indemnity agreement, rather than whether attorney's fees were allowable at all under state law. *See Wagner v. Fireman's Fund Ins. Co.*, 352 F.2d 410, 415 (10th Cir.1965) (finding that the indemnity agreement at issue could not be construed to cover attorney's fees incurred in enforcing the agreement); *Missouri Pac. R.R. Co. v. Kansas Gas & Elec. Co.*, 862 F.2d 796, 801 (10th Cir.1988) (holding that under Kansas law, language in indemnity agreement was broad

---

**3.** In *Ireland,* the third party claimant was in bankruptcy. The court found that as long as the indemnitee needed to hire an attorney to represent its interests in defending the claim within

the claimant's bankruptcy proceeding, even attorney's fees for bankruptcy services were recoverable. *Ireland,* 103 Kan. at 624, 176 P. 103.

enough to include attorney's fees incurred in enforcing indemnity agreement).

Furthermore, indemnity agreements do not meet the definition of "note" in the Uniform Commercial Code. A note is defined as an unconditional promise to pay a fixed amount of money, which is payable on demand or at a definite time to the bearer of the promise or to order. K.S.A. 84-3-104. An indemnity agreement fails this definition in several respects. First, it is not a promise to pay. The indemnitor is merely acknowledging an obligation or duty to make good any loss or damage suffered by the indemnitee in acting at the request of or on behalf of the indemnitor. *See* 41 Am.Jur.2d *Indemnity* § 1 (1968). An obligor on a note is promising to pay a sum certain. The promise is unconditional. The obligor has received money or other consideration and promises to pay the obligee.

Moreover, even if the indemnitor is promising to pay the indemnitee it is a conditional, not unconditional promise. The promise is conditioned on the indemnitee suffering a loss or damages on behalf of the indemnitor. *See* K.S.A. 84-3-106. If the indemnitee never suffers loss or damage, the indemnitor has not promised to pay anything. Thus, a condition precedent to the indemnitor's obligation, is the indemnitee suffering a loss or damage. Until such time, there is no enforceable promise. The cause of action on an indemnity agreement accrues only when loss or damage is suffered. A cause of action on a note or contract, however, accrues at the time of breach, whether or not loss or damage has occurred, because a note is an unconditional promise to pay irrespective of loss or damage. *See* 41 Am.Jur.2d *Indemnity* § 3 (1968).

Furthermore, even if the indemnity agreement constitutes an unconditional promise from the indemnitor to the indemnitee, it is not a promise to pay a fixed amount of money. Unlike a note, guaranty or surety agreement, there is no face amount in an indemnity agreement, no sum certain. The indemnitor agrees to pay whatever loss or damage is sustained by the indemnitee.

Thus, an indemnity agreement is not a "note" within the meaning of K.S.A. 58-2312.

Nor is an indemnity agreement an evidence of indebtedness. At the time the indemnity agreement is entered into, there is no debt. The indemnitor is not indebted in any way to the indemnitee. The agreement is merely an assurance that to the extent the indemnitee suffers loss or damage on behalf of the indemnitor, the indemnitee will be made whole.

Nor is an indemnity agreement a "bond." In this case, as in many cases in which an indemnity agreement exists, the indemnitee is a surety on a bond for which the indemnitor is the principal. But the indemnity agreement is not the bond. It is a separate and distinct agreement between the indemnitor and the indemnitee that may or may not be premised on a bond (or other agreement or transaction) between the indemnitee and a creditor or obligee of the indemnitor. *See* 42 C.J.S. *Indemnity* § 4 (1991); 41 Am.Jur.2d *Indemnity* §§ 3, 4 (1968). Therefore, an indemnity agreement cannot be accurately characterized as a bond.

The Trustee argues that even if attorney's fees in an indemnity agreement are not prohibited by K.S.A. 58-2312, the agreement at issue covers only defensive attorney's fees, incurred by the indemnitee in defending the indemnified claim against the indemnitor. The Trustee contends that the language in the indemnity agreement does not allow for recovery of enforcement attorney's fees, incurred by the indemnitee in seeking to enforce the indemnity agreement against the indemnitor.

Attorney's fees clauses in indemnity agreements are typically construed to cover fees incurred in defending the indemnified claim. *Ireland v. Linn County Bank*, 103 Kan. 618, 176 P. 103 (1918). *See also* 41 Am.Jur.2d *Indemnity* § 35 (1968); 42 C.J.S. *Indemnity* § 20 (1991). In this case, the indemnity agreement clearly covers attorney's fees State Farm incurred in defending the claim against the debtor in the matter of the Estate of Wesley Dvorak. The agreement provides that the debtor will indemnify State Farm for costs, including reasonable

attorneys fees "for or by reason or in consequence of the Company having become surety on any such bond(s) ...." As a consequence of State Farm being a surety for the obligations of the debtor as conservator and guardian of Wesley Dvorak, State Farm defended the Estate's claim against the debtor. And, to the extent that State Farm incurred attorney's fees in defending against this claim, these fees, to the extent they are reasonable, are an allowable component of State Farm's proof of claim.

 However, attorney's fees incurred by the indemnitee in enforcing the indemnity agreement against the indemnitor are not necessarily recoverable. The Court must examine the agreement and determine if the language is broad enough to cover these types of expenses as well. In *Missouri Pac. R.R. Co. v. Kansas Gas & Elec. Co.*, 862 F.2d 796, 801 (10th Cir.1988), the court found that the indemnity agreement covered enforcement fees. The agreement indemnified Missouri Pacific for all damages, costs and fees "arising out of or connected with" KG & E's failure to keep the side railroad track clear and passable. *Id.* The court deemed that language sufficient to include attorney's fees resulting from the action to enforce the indemnity agreement. *Id.* Likewise, in *Chetopa State Bancshares, Inc. v. Fox*, 6 Kan. App.2d 326, 332–33, 628 P.2d 249 (1981), the court found that the agreement covered enforcement fees, in language indemnifying expenses incurred "at any time after the date hereof, arising from, or as a result or in respect of, the breach of any warranty, representation or covenant made by Sellers or any of them in this Agreement...."

In *Wagner v. Fireman's Fund Ins. Co.*, 352 F.2d 410 (10th Cir.1965), however, the court reached the opposite result. It found that the following language did not cover enforcement fees:

> The Indemnitors will indemnify the Surety against any and all liability, loss, costs, damages, fees of attorneys and other expenses which the Surety may sustain or incur in consequence of the execution of such bonds ... including but not limited to, sums paid or liabilities incurred in settlement of, and expenses paid or incurred in connection with claims, suits, or judg-

> ments under any such bonds, expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.

*Id.* at 415. The court found that despite the language providing for expenses associated with recovering losses or expenses paid, there was no express provision allowing attorney's fees incurred in an action to enforce the agreement, and that absent such language, the court should construe the agreement strictly against the indemnitee, who drafted the agreement. *Id.*

 In this case, the indemnity agreement provides that the indemnitor will

> indemnify and save the Company harmless from and against all liability, claims, losses, costs, damages, suits, charges and expenses of whatsoever kind and nature, including reasonable attorneys fees, which the Company shall at any time sustain or incur, **for or by reason or in consequence of the Company having become surety on any such bond(s)** or any modification, renewal or continuation thereof, or new bond(s) substituted therefor.

The language of the agreement is not ambiguous. It is clear that while attorney's fees are recoverable, only those that are sustained or incurred by virtue of State Farm being surety on the bond posted in the Estate of Wesley Dvorak are recoverable. While this clearly covers fees expended in defending any and all claims against the indemnitor by the Estate, there is nothing in the agreement to indicate that fees expended in a separate lawsuit to enforce the indemnity agreement are also recoverable. There is no language that expenses arising out of, connected with or related to the surety bond are recoverable. Rather, the agreement limits recoverable expenses to those incurred as a consequence of the surety bond, not those incurred as a consequence of the indemnity agreement. Therefore, attorney's fees incurred by State Farm in enforcing the indemnity agreement are not recoverable.

The parties have not stipulated to the nature of the services underlying the claim for attorney's fees. It appears from their stipulation, that the claim includes fees for both

defensive and enforcement work.[4] Thus, the Court is unable to determine how much of State Farm's claim should be allowed.

State Farm is directed to submit, within 14 days of entry of this Memorandum Opinion and Order, a supplemental statement itemizing the fees expended in defending the indemnified claim, including fees for paying the claim, litigating the claim, negotiating the claim and/or settling the claim. State Farm should further itemize the fees expended in enforcing the claim, including the fees expended in defending the Trustee's objection to proof of claim.

The Trustee is directed to file any response or objection within 7 days thereafter. At that time, the Court shall enter an order allowing the proof of claim in a certain amount, or shall set the matter for evidentiary hearing, as circumstances may require.

**IT IS THEREFORE ORDERED BY THE COURT** that the trustee's objection to Amended Claim # 5 of State Farm Fire & Casualty Company is GRANTED, but only with regard to attorney's fees incurred by State Farm in enforcing the indemnity agreement.

**IT IS FURTHER ORDERED BY THE COURT** that State Farm is directed to submit, within 14 days of entry of this Memorandum Opinion and Order, a supplemental statement as set forth above, and the trustee is directed to file any response or objection within 7 days thereafter.

This Memorandum shall constitute findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Rule 9021 of the Federal Rules of Bankruptcy Procedure and Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

### ORDER ALLOWING ATTORNEYS' FEES

[26] This matter comes before the Court pursuant to the Response to Court's Attorneys Fees Request filed by State Farm Fire & Casualty Company (State Farm). The Court entered a Memorandum Opinion and Order on December 19, 1994, which granted the trustee's objection to Amended Claim # 5 of State Farm, but only with regard to attorney's fees incurred by State Farm in enforcing the indemnity agreement. Therefore, the Court directed State Farm to submit a supplemental statement itemizing the fees expended in defending the indemnified claim. State Farm's response sets forth those fees expended in defending Adolph Dvorak on the surety bond in the amount of $1923.00. The trustee has not objected to those fees, and the Court finds that the fees in the amount of $1923.00 should be allowed for the reasons set forth in the Court's December 19, 1994 Memorandum Opinion and Order.

**IT IS THEREFORE ORDERED BY THE COURT** that State Farm's claim consisting of attorney's fees in the amount of $1923.00 shall be allowed.

IT IS SO ORDERED.

---

4. They stipulated that State Farm filed a proof of claim "[a]s a result of necessary litigation associated with the debtor's failure to comply with his obligations undertaken as conservator and guardian in the state court matter, and associated expenses which State Farm incurred in seeking to recoup those expenses and the bond loss...."