(606 P.2d 498)

No. 50,620

HARVESTER, INC., a Kansas Corporation, *Appellee,* v. THE GOOD-
YEAR TIRE AND RUBBER COMPANY, *Appellant.*

Opinion filed February 15, 1980.

*Robert C. Brown,* of Smith, Shay, Farmer & Wetta, of Wichita, for appellant.

*John V. Black,* of John V. Black, Chartered, of Pratt, for appellee.

Before REES, P.J., SPENCER and MEYER, JJ.

MEYER, J.: This case involves a breach of compromise agreement between appellee Harvester, Inc. (plaintiff), and appellant The Goodyear Tire and Rubber Company (defendant).

From 1961 to 1966 plaintiff purchased substantial amounts of hose from defendant to be used in its manufacture of hydraulic couplings. In 1966 plaintiff received customer complaints about hose incompatibility. Plaintiff advised defendant of these complaints and alleged that it lost $6,867.24 in business as a result. Defendant denied fault but to preserve the business relation entered into a compromise agreement whereby defendant wrote off the balance due from plaintiff on past purchases ($4,143.66) and agreed to give plaintiff a 7½ percent discount from the then current coupling manufacturer's price for future purchases until the remaining claim of $2,724.18 was exhausted. This agreement, according to the trial court's findings, occurred in late 1968. In

1969, plaintiff purchased $1,077.74 worth of hose for a credit of $80.83 from defendant. Thereafter, despite continued solicitation of sales by defendant to plaintiff, plaintiff did not purchase any more hose from defendant. Plaintiff sought other sellers because of warehouse arrangements which allowed it a lower pricing level. In 1971, defendant sent a letter to plaintiff discussing the current status of the account. In January, 1974, the market for hose became tight and plaintiff was not able to secure hose elsewhere. Plaintiff placed an order for hose, but defendant had other commitments and could not supply plaintiff. Plaintiff then demanded the cash equivalent of the $2,642.75 remaining in credit under the compromise agreement. Defendant refused. Plaintiff brought this action in April, 1975, and judgment was given for the $2,642.75.

Defendant raises the equitable defenses of (a) equitable estoppel, (b) laches, (c) waiver, and (d) release.

Defendant argues that plaintiff is estopped from asserting its claim because for several years it did not purchase hose from the defendant. It is noted, however, that plaintiff did make certain purchases in 1969 and as late as November 1, 1971, defendant, in a letter to plaintiff, was taking issue with plaintiff as to the exact sum still due on their contract, thus indicating to us that at that time defendant still felt the deal was a continuing one.

"The doctrine of equitable estoppel requires consistency of conduct, and a litigant is estopped and precluded from maintaining an attitude with reference to a transaction involved wholly inconsistent with his previous acts and business connection with such transaction." *Browning v. Lefevre,* 191 Kan. 397, Syl. ¶ 2, 381 P.2d 524 (1963).

"One who asserts an estoppel must show some change in position in reliance on the adversary's misleading statement." *In re Morgan,* 219 Kan. 136, 137, 546 P.2d 1394 (1976).

"Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts." *United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.,* 221 Kan. 523, 527, 561 P.2d 792 (1977).

It was stated in *Maurer v. J. C. Nichols Co.,* 207 Kan. 315, Syl. ¶ 3, 485 P.2d 174 (1971):

"The doctrine of equitable estoppel is based upon the principle that a person is held to a representation made or a position assumed where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances, has in good faith relied thereon."

We conclude that, in order for plaintiff to be estopped, it would have had to give some indication that it would not purchase hose from defendant in the future. The facts do not reveal any such indication.

The same might be said of defendant's argument as to waiver. "The intent to waive known rights is essential." *Prather v. Colorado Oil & Gas Corp.,* 218 Kan. 111, 117, 542 P.2d 297 (1975).

The intention to relinquish a known right may be inferred from conduct. See *Flott v. Wenger Mixer Manufacturing Co.,* 189 Kan. 80, 90, 367 P.2d 44 (1961).

Nowhere in the record do we find any reference that plaintiff ever intended to waive its rights under the agreement.

As to defendant's claim that plaintiff is barred by the doctrine of laches, we note that:

"The doctrine of laches is an equitable device designed to bar stale claims, and courts of equity will regard long passage of time in asserting claims with disfavor apart from any particular statute of limitations." *Clark v. Chipman,* 212 Kan. 259, Syl. ¶ 6, 510 P.2d 1257 (1973).

"Delay, by itself, does not constitute laches and an action generally will not be defeated by laches alone unless some prejudice has resulted therefrom to the rights or interests of the adverse party." *Darby v. Keeran,* 211 Kan. 133, Syl. ¶ 10, 505 P.2d 710 (1973).

It should be noted that plaintiff had more than an option to purchase hose; plaintiff was entitled to $2,642.75 as part of the compromise agreement.

The law, as to when a right must be exercised—absent a time fixed by contract—is that same must be exercised within a reasonable time.

The law in regard to what is a sufficient amount of time was stated in *Clark v. Chipman,* 212 Kan. 259, Syl. ¶ 7:

"The mere passage of time is not enough to invoke the doctrine of laches. Lapse of time is necessarily a relative matter in which all surrounding circumstances must be taken into account. Each case must be governed by its own facts and what might be considered a lapse of sufficient time to defeat an action in one case might be insufficient in another."

Plaintiff had no duty to purchase any hose within any specified time period. Rather, the consideration for the contract was for-

bearance of a suit by plaintiff. We conclude laches does not bar plaintiff herein.

What has been said relative to estoppel, laches, and waiver, is equally applicable to any implied release which might preclude plaintiff's recovery herein. For the foregoing reasons, we find there is no merit to defendant's contentions regarding estoppel, laches, waiver, and release.

The trial court, as a conclusion of law, determined that by the November 1, 1971, letter from defendant to plaintiff, that defendant "unequivocally acknowledged the credit in question in the amount of $2,642.75 to be a present existing liability . . . ." The trial court considered that a three-year statute of limitations applied and that the statute began to run on or about November 11, 1968. The trial court ruled that the November 1, 1971, letter started the three-year statute anew. It also gave an alternative reason for its decision, that the cause of plaintiff's action did not accrue until 1974 when defendant refused plaintiff's order.

We conclude that the trial court correctly held that K.S.A. 60-512 was the applicable statute of limitations. This is a three-year statute.

"The general rule is that a written agreement, contract or promise in writing which falls within the five-year statute of limitations, K.S.A. 60-511(1), must contain all its material terms in writing. A contract which is partly in writing and partly oral is in legal effect an oral contract so far as the statute of limitations may be concerned. The writing necessary to have the additional protection of the five-year statute must be full and complete in itself so as not to require proof of extrinsic facts to establish all essential contractual terms." *Miller v. William A. Smith Constructing Co.*, 226 Kan. 172, 174, 603 P.2d 602 (1979).

We do not, however, interpret the November 1, 1971, letter as an unequivocal acknowledgement of a debt, but we do conclude it had the effect of acknowledging that the deal between the parties was still, on that date, an ongoing one. That letter thus had the effect of extending the time which would be considered reasonable during which plaintiff must order. With this in mind, we conclude the three-year statute of limitations began to run on the date defendant refused to fill the 1974 order, and that same had not run when plaintiff commenced this action in April, 1975.

"A cause of action accrues when the right to institute and maintain a suit arises, or when there is a demand capable of present enforcement. [Citations omitted.]

There must be a right, a duty, and a default." *Holder v. Kansas Steel Built, Inc.,* 224 Kan. 406, 410, 582 P.2d 244 (1978).

Here the default did not occur until defendant refused to fill plaintiff's order and would not pay cash for the amount still owed under the compromise agreement.

The trial court's conclusion that the statute of limitations had not run was correct.

It is not necessary for us to decide the cross-appeal on its merits. The cross-appeal was filed out of time and a motion to file the notice of appeal out of time was denied. Therefore, the court does not have jurisdiction to hear the cross-appeal.

"The Supreme Court has only such appellate jurisdiction as is conferred by statute. This court has no jurisdiction to hear appeals not filed within time limits set by K.S.A. 60-2103. Absent compliance with the statutory rule, this court has the duty to dismiss the appeal." *Giles v. Russell,* 222 Kan. 629, 632, 567 P.2d 845 (1977).

Affirmed.

REES, J., concurs in the result.