(628 P.2d 249)

No. 51,887

CHETOPA STATE BANCSHARES, INC., A KANSAS CORPORATION, *Plaintiff-Appellant,* v. GEORGE A. FOX, Individually; LILLIAN M. FOX, GEORGE A. FOX, Trustee for KATHY MORRISON, TIMMY LAMB and DAVID LAMB, FOX INVESTMENT COMPANY, INC., CATHY J. LAMB, AMY JONES, MILES FALKENSTEIN, FRANK ALBERTINI, GLENN JONES and JACK RORSCHACH, *Defendants-Appellees.*

Opinion filed May 15, 1981.

*Randy S. Stalcup,* of Kidwell & Williamson, Chartered, of Wichita, for appellant.

*Charles F. Forsyth,* of Erie, for appellees.

Before FOTH, C.J., presiding, TERRY L. BULLOCK, District Judge, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

WOLESLAGEL, J.: As parts of a contract for the sale of the stock of the Chetopa State Bank, the defendants, as stockholder-sellers, provided two indemnity clauses in favor of the purchaser who assigned his rights to the plaintiff.

The first provision related to claims or debts then existing, "or growing out of this Stock Purchase Agreement."

The second provision related to expense "at any time after the date hereof, arising from, or as a result or in respect of, the breach of any warranty, representation or covenant made by Sellers" in the agreement.

Two lawsuits and one tax claim, each based on earlier conduct

of the bank, were resisted by plaintiff. When the defendants refused to reimburse the plaintiff for its attorney fees in connection with those existing claims, this suit was brought to enforce plaintiff's rights under the contract.

The trial court granted judgment to reimburse plaintiff for the fees in regard to the three existing claims. It denied plaintiff recovery of attorney fees in this suit brought to enforce its claimed indemnification rights under the contract.

In appealing from this denial, the plaintiff lists one issue: Is the indemnitee entitled to recover attorney fees in the action establishing its right to indemnification wherein such recovery is specifically provided for by contract? Perhaps the issue is a bit too simply stated, as there is a necessary underlying factual determination to be made: Did the contract provide for recovery of attorney fees relative to an indemnity suit? Believing an affirmative answer to that question, as well as to plaintiff's stated question, is indicated by the record, we reverse.

This appears to be a case of first impression in this state. Most reported decisions from other states hold, as did the trial court here, that attorney fees are not recoverable in suits to enforce an indemnity contract. See 42 C.J.S., Indemnity § 13d, p. 587. Under these circumstances, the contractual clauses of the contract and the trial judge's essential findings should be set forth in detail. The contractual provisions are as follows:

"3.8 Indemnity.

"(i) Sellers agree to indemnify, save and hold Stuckey and the Bank and its successors and assigns, and each of them, free and harmless of and from all demands, claims, actions or causes of actions, assessments, lawsuits, damages and attorney's fees by reason *of any claim, obligations, debts, demands or liabilities existing against the Bank prior to and including the date of the Closing or thereafter coming into being by reason of any state of facts existing prior to and including the date of Closing, or arising or growing out of this Stock Purchase Agreement,* except to the extent that the same have been set forth in said financial statements or except from the operation of the Bank's business since December 31, 1973, if such has been operated in accordance with the terms and provisions of this Agreement, namely that the business of the Bank will not be conducted other than in the ordinary course of business." (Emphasis added.)

"5.1 Indemnity. Subject to the limitations set forth herein, and where no insurance coverage is applicable, Sellers agree to indemnify and hold Stuckey harmless from and against any loss, damage, deficiency or *expense (including reasonable attorney's fees) suffered or incurred by Stuckey at any time after the date hereof, arising from, or as a result or in respect of, the breach of any warranty, representation or covenant made by Sellers or any of them in this Agreement,* including

specifically but not limited to the warranties made by Sellers with respect to taxes, undisclosed liabilities, net worth and net income of the Bank. Notice of any claim hereunder, or of any facts which might reasonably give rise to a claim hereunder shall be given by Stuckey to Sellers with reasonable promptness after learning thereof; provided, however, Sellers shall have no liability under the foregoing indemnity unless such notice shall have been given by Stuckey to Sellers on or before the 2nd day of January, 1979. In case a claim is asserted against Stuckey or the Bank that might give rise to a claim hereunder, such underlying claim may but need not be contested or defended by Stuckey or the Bank, and Sellers shall have the right to participate therein, or otherwise to contest or defend such underlying claim, by counsel of their own choice at their own expense. If within thirty (30) days after notice of such underlying claim shall have been given as above provided, Sellers do not undertake to contest or defend such underlying claim and thereafter diligently prosecute such contest or defense, any such underlying claim may be paid, settled or otherwise disposed of as Stuckey or the Bank may deem advisable, without further notice to or consent of Sellers, and without releasing Sellers from their liability under the foregoing indemnity." (Emphasis added.)

### The trial court's Journal Entry of December 21, 1978, included the following:

"1. That on the 6th day of September, 1973, the defendants (hereinafter referred to as 'defendants' or as 'Sellers') entered into a Stock Purchase Agreement with Louis N. Stuckey, Jr. (hereinafter referred to as 'Stuckey') for the purpose of selling to Stuckey all of the stock of Chetopa State Bank and Trust Company.

"2. That said Stock Purchase Agreement contained indemnity provisions which are applicable to the facts and issues in this action and which indemnity provisions are set out in full in paragraphs 3.8(i) and 5.1 of said Agreement as attached to the pleadings; and that thereafter on or about January 2, 1974, Stuckey assigned his interest in the Stock Purchase Agreement to Chetopa State Bancshares, Inc., the plaintiff in this action.

"3. That on December 27, 1974, an action was filed in the United States District Court for the Northern District of Oklahoma (Case No. 74-C-620-B) naming George A. Fox and the Chetopa State Bank and Trust Company as defendants; that defendant Fox was later dismissed from said action by the plaintiffs therein and the suit was continued as against the defendant, the Chetopa State Bank and Trust Company.

"4. That defendant George A. Fox entered his appearance in said action in the Northern District of Oklahoma and defended the same in his own name individually and on his own behalf only.

"5. That on December 30, 1974, Stuckey gave notice of said action to the Sellers in accordance with the terms of the Stock Purchase Agreement.

"6. That none of the named defendants in this action (neither George A. Fox nor the other Sellers under the Agreement) defended said action on behalf of the Chetopa State Bank and Trust Company; that said defendants in this action did not retain legal counsel nor enter any appearance nor file any pleadings in the United States District Court for the Northern District of Oklahoma on behalf of the Chetopa State Bank and Trust Company who was a named party defendant in that action.

"7. That Chetopa State Bancshares, Inc., was required to employ legal counsel and incur expenses in defense of the action in the United States District Court for the Northern District of Oklahoma on behalf of the Chetopa State Bank and Trust Company on the failure of defendants Fox and the other Sellers to do so under the provisions of the Stock Purchase Agreement.

"8. That as a result of an audit of the Chetopa State Bank and Trust Company by the Internal Revenue Service in 1975, tax deficiencies were assessed against Chetopa State Bank and Trust Company with regard to its 1972 and 1973 taxable income.

"9. That on September 5, 1975, Stuckey gave notice of the claim for tax deficiencies being asserted by the Internal Revenue Service to the Sellers in accordance with the terms of the Stock Purchase Agreement.

"10. That none of the defendants (neither George A. Fox nor the other Sellers under the Agreement) took any action in regard to the Internal Revenue Service claim for tax deficiencies for the years 1972 and 1973 against the Chetopa State Bank and Trust Company.

"11. That Chetopa State Bancshares, Inc., was required to employ legal counsel and incur expenses in settling and paying the 1972 and 1973 tax deficiencies with the Internal Revenue Service on failure of any of the defendants so to do.

"12. That on July 1, 1976, an action was commenced in the United States District Court for the District of Kansas (Case No. 76-300-C6) naming the Chetopa State Bank and Trust Company as defendant.

"13. That on July 14, 1976, Stuckey gave notice of said action to the Sellers in accordance with the terms of the Stock Purchase Agreement.

"14. That thereafter, George A. Fox was brought into the case as a third party defendant by Chetopa State Bancshares, Inc., as third party plaintiff.

"15. That defendant George A. Fox entered his appearance in said action and defended the same in his own name individually and on his own behalf only.

"16. That none of the defendants in this action (neither George A. Fox nor the other Sellers under the Agreement) defended said action on behalf of Chetopa State Bank and Trust Company; that said defendants did not retain legal counsel nor enter any appearance nor file any pleadings on behalf of Chetopa State Bank and Trust Company who was a named party defendant in the action in the United States District Court for the District of Kansas.

"17. That Chetopa State Bancshares, Inc., was required to employ legal counsel and incur expenses in defense of said action in the United States District Court for the District of Kansas on behalf of the Chetopa State Bank and Trust Company on the failure of defendants Fox and the other Sellers so to do under the Stock Purchase Agreement.

"18. That the two actions in the federal courts hereinbefore mentioned and the Internal Revenue Service claim for tax deficiencies occurred as a result of events occurring or by reason of a state of facts existing prior to the date of closing of the Stock Purchase Agreement and for which defendants expressly agreed to indemnify and hold Stuckey free and harmless under the terms of the indemnity provisions of said Agreement.

"19. That the language contained in paragraph 3.8(i) of the Stock Purchase Agreement is clear and unambiguous; it does not require interpretation by the Court; and such language, as employed, should be given its usual and ordinary meaning.

"20. That paragraph 5.1 of the Stock Purchase Agreement provides in part that if the Sellers fail to contest or defend any claim against the Chetopa State Bank and Trust Company within 30 days from the date notice of such claim has been given by Stuckey to the Sellers, then Stuckey (or Chetopa State Bancshares, Inc.,) may settle or defend the same and are entitled to be indemnified for reasonable attorney's fees and expenses incurred in defense thereof.

"21. That the Stock Purchase Agreement as drawn by counsel for plaintiff was not acceptable to defendant George A. Fox; and as a result, with the consent of defendant Fox, the final form of the Stock Purchase Agreement was prepared by Glenn Jones, an attorney and one of the Sellers, and the provisions thereof should be construed against the Sellers in the event that any doubt should exist as to interpretation of the Stock Purchase Agreement or if there should be any reason for construction of any of the terms of said Agreement.

"22. That plaintiff has made demand upon the defendants for reimbursement for its fees, expenses and payments hereinabove referred to and that defendants, excepting Jones, Falkenstein and Albertini, have failed and refused to reimburse plaintiff.

"23. That no genuine issue of material fact exists with respect to defendants' liability to plaintiff under paragraph 3.8(i) of the Stock Purchase Agreement in regard to the action in the United States District Court for the Northern District of Oklahoma wherein Chetopa State Bank and Trust Company was a named party defendant, and in the action in the United States District Court for the District of Kansas wherein Chetopa State Bank and Trust Company was a named party defendant, and in the compromising, settling and paying the tax deficiencies assessed against the Chetopa State Bank and Trust Company for the taxable years 1972 and 1973."

In its judgment entered October 11, 1979, the trial court's findings include:

"3. That plaintiff, through its paying agent, Chetopa State Bank and Trust Company, has incurred and paid attorney fees and expenses for legal and professional services and settlement of the 1972-73 tax liability for the period December 27, 1974, through August 1977 in the amount of Fourteen Thousand Eight Hundred Dollars and Thirty-seven Cents ($14,800.37) as prayed for in plaintiff's petition and as evidenced in Exhibit 'G' attached to plaintiff's petition and by the exhibits received in evidence at the hearing on August 24, 1979.

"4. That all of said attorney fees and expenses referred to in finding No. 3 above arose out of the litigation and circumstances recited and described in findings No. 3 through 7, 8 through 22, and 12 through 17 in the Journal Entry of Judgment reflecting the proceedings had in this court on October 23, 1978, and filed on December 21, 1978; such findings being incorporated by reference herein.

"5. That all of said attorney fees and expenses incurred and paid by plaintiff as set out in finding No. 3 above were not unreasonable nor excessive under all of the circumstances presented.

"6. That except for defendants Glenn Jones, Frank Albertini and Miles Falkenstein, the remaining defendants are liable to plaintiff under the indemnity provisions of paragraph 3.8(i) of the Stock Purchase Agreement in the total

amount of Thirteen Thousand Three Hundred Thirty-five Dollars and Sixteen Cents ($13,335.16) as the balance remaining due on said attorney fees and expenses incurred by plaintiff in the litigation between the State Bank of Grove v. Chetopa State Bank & Trust Company v. George Fox, Civil Action No. 76-300-C6; State Bank of Grove v. Chetopa State Bank, Case No. 74-C-602-B; and in connection with the compromise, settlement and payment of claimed 1972 and 1973 income tax deficiencies of Chetopa State Bank & Trust Company after crediting the sums totaling One Thousand Four Hundred Sixty-five Dollars and Twenty-one Cents ($1,465.21) heretofore tendered to the plaintiff by defendants Jones, Albertini and Falkenstein.

"7. That in accordance with paragraph 5.2(c) *Limit of Sellers' Liability* of the Stock Purchase Agreement, the defendants, except for Glenn Jones, Frank Albertini and Miles Falkenstein, are liable to the plaintiff on a pro-rata basis in proportion to the percentage of stock ownership of each as reflected in Exhibit 'A' of the Stock Purchase Agreement of September 6, 1973; and, further, except that in accordance with paragraph 5.2(b)(i), each of the defendants against whom liability is found herein are liable without limit for the 1973 tax liability paid in the total amount of $472.00.

"8. The Court further finds that the attorney fees and expenses incurred with respect to the litigation and settlement and payment of tax deficiencies, described in finding No. 3 above, came into being by reason of a state of facts existing prior to and including the date of closing of the Stock Purchase Agreement; and, accordingly, plaintiff is entitled to indemnity as provided in paragraph 3.8(i).

"9. The Court further finds that the indemnity provisions of paragraph 5.1 provide for indemnification of the plaintiff for any loss, damage or expense, including reasonable attorney fees, incurred at any time after the date of the Stock Purchase Agreement arising from or as a result of the breach of any warranty, representation or covenant made by the defendants to the plaintiff, including specifically, but not limited to, the warranties made with respect to the taxes, undisclosed liabilities, net worth and net income of the bank.

"10. The Court finds that plaintiff's claim for damages in an amount equal to the additional attorney fees, expenses and costs incurred by plaintiff in the instant case in the total amount of Sixteen Thousand Eight Hundred Forty-eight Dollars and Fifty-three Cents ($16,849.53)[*sic*] should be denied for the reason that said claim does not arise from and has not come into being by reason of any state of facts existing prior to and including the date of closing of the Stock Purchase Agreement for which indemnification is provided under paragraph 3.8(i); and, further, that the refusal and failure of defendants to indemnify plaintiff under the provisions of paragraph 3.8(i) is not a breach of warranty of the Stock Purchase Agreement for which indemnification is provided by paragraph 5.1."

The rules governing the interpretations and construction of indemnity contracts are no different than those relating to other types of contracts. In *Missouri Pacific Railroad Co. v. City of Topeka,* 213 Kan. 658, 662, 518 P.2d 372 (1973), the Supreme Court stated:

"A few observations as to indemnity seem pertinent. The word is generally

defined as an obligation resting on a party to make good any loss another has incurred while acting at his request or for his benefit; it is a right which inures to a person who has fulfilled an obligation owed by him but which as between himself and another person should have been discharged by the other. (41 Am. Jur. 2d, Indemnity, § 1, p. 687.) In construing a contract of indemnity and determining the rights and liabilities of the parties thereunder, the important question to be determined is the intention of the parties, and effect should be given to that intention if such can be done consistently with legal principles. (41 Am. Jur. 2d, Indemnity, § 13, p. 697; 42 C.J.S., Indemnity, § 8[a], p. 574.)"

In *Bartlett v. Davis Corporation,* 219 Kan. 148, Syl. ¶ 2, 547 P.2d 800 (1976), the principle was stated:

"A contract of indemnity is construed in accordance with the general rules for the construction of contracts. The cardinal rule is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles."

Since we fully agree with the trial judge's findings of fact as to the events which led to this suit, the question remaining depends upon what is a proper determination of the contract terms. It could be argued that plaintiff is entitled to indemnity suit reimbursement under that part of Clause 3.8 which includes "or arising or growing out of this Stock Purchase Agreement." It might also be argued, however, that this suit grows out of a breach of the agreement, rather than, and as distinct from, growing out of the agreement. It would seem that indemnity contracts are not favorites of the law and, as stated in 42 C.J.S., Indemnity § 8 b, p. 576, after determining intention of the parties by ordinary rules, "the indemnitor is entitled to have his undertaking . . . strictly construed, and . . . it cannot be extended by construction or implication beyond the terms of the contract."

While we will apply a strict interpretation test as to the indemnitor's possible liability, we do not at all mean to indicate that is required. Neither *Missouri Pacific Railroad Co.* nor *Bartlett* indicate the test to be used is anything more than what is appropriate in other contract cases. Because *Bartlett* involved indemnity for the indemnitee's own negligence, the court indicated "clear and unequivocal" language was necessary for the indemnitee to recover.

We agree with the trial judge as to the scope of Clause 3.8. At best, a strict construction of it would seem to be that it applied only to facts at the time of making the contract.

Our decision is based upon Clause 5.1, as it covers attorney fees arising "after the date hereof" and "in respect of, the breach of any warranty, representation or covenant made by Sellers." As to this suit, there is no room to dispute that it arose after the date of the contract and because of defendant's breach of its promise to pay expenses relative to existing claims. The matter, therefore, comes down to whether or not the sellers made what, in law and by strict construction, may be classed as any "warranty, representation or covenant" that they would pay those expenses.

A contract warranty is defined in Black's Law Dictionary 1758 (4th ed. rev. 1968) as an undertaking "that a certain fact in relation to the subject of a contract is or shall be as it is stated or promised to be." Black defined representation as relating to past or existing facts only. Covenant, however, is defined as an agreement pledging "that something is either done *or shall be done."* (p. 436, emphasis supplied.)

Bouvier's Law Dictionary, Baldwin's Edition, 1934, defines affirmative covenants as "those in which the coventor declares that something has been already done, or shall be done in the future." It states that "collateral covenants" are those "entered into in connection with the grant of something, but which do not relate immediately to the thing granted."

Assuming, but not holding, that the entitlement of an indemnitor to strict interpretation goes so far as definition interpretation, we have no representation here. A question would lie as to whether we have a warranty—namely, argument might be made that this promise to pay does not relate to the "subject matter" of the contract. But what we do recognize in this agreement is a covenant—an affirmative collateral one, but a covenant nonetheless.

Except for an Alaska decision in 1976 (see *Manson-Osberg Company v. State,* 552 P.2d 654) predicated upon a statute and public policy determination that costs of enforcing an indemnity contract are recoverable, the holdings in other states appear to be reasonably uniform. As in Kansas, most states have a postulate that attorney fees are recoverable only if provided by statute or contract. Absent a statute, there must be express contractual language. See *Jones v. Strom Construction Co.,* 84 Wash. 2d 518, 527 P.2d 1115 (1974); *Vallejos v. C. E. Glass Co.,* 583 F.2d 507 (10th Cir. 1978); *Tidewater Construction Corp. v. Southern Ma-*

*terials Co.,* 269 F. Supp. 1000 (E.D. Va. 1967), *Grigsby v. Coastal Marine Service of Texas, Inc.,* 317 F. Supp. 1113 (W.D. La. 1969); *D'Albora v. Tulane University,* 274 So. 2d 825 (La. App. 1973). We find such express contractual language here.

Since the plaintiff is entitled to indemnity even when the defendants are given the benefit of a strict construction, we turn to plaintiff's request that we set its trial court and appellate court attorney fees. While we believe it is entitled to the fee on appeal, it would be small compared to what it claimed for the trial court work. We believe the trial court is in the better position to know what amounts would be reasonable in this case and on remand they should be determined.

One final matter remains. The plaintiff served and filed a timely notice of appeal under K.S.A. 60-2103, but was late in docketing the appeal under Rule 2.04 (224 Kan. xxxiv). The plaintiff was granted permission to docket the appeal out of time. The defendants did not serve or file a notice of cross-appeal within the statutory time. For this reason, they were previously denied the right to docket their cross-appeal out of time. The defendants claim we should now determine this denial was erroneous and they have briefed several claims of error in trial court rulings.

The argument overlooks the distinction between those procedural requirements of the rules which may be waived and the jurisdictional requirements of the statutes which may not be waived. "The filing of a timely notice of appeal is jurisdictional." *State v. Moses,* 227 Kan. 400, Syl. ¶ 8, 607 P.2d 477 (1980). The same rule applies to a notice of cross-appeal. *Harvester, Inc. v. Goodyear Tire & Rubber Co.,* 4 Kan. App. 2d 363, 367, 606 P.2d 498 (1980). We have no jurisdiction to consider the points raised on the purported cross-appeal.

Reversed and remanded.