**NATIONAL MINORITY SUPPLIER DEVELOPMENT COUNCIL BUSINESS CONSORTIUM FUND, INC.,** Plaintiff,

v.

**The FIRST NATIONAL BANK OF OLATHE, Defendant.**

No. Civ.A. 98–2505–CM.

United States District Court, D. Kansas.

Dec. 14, 1999.

William F. High, James D. Griffin, Stephen J. Torline, Blackwell Sanders Peper Martin LLP, Overland Park, KS, for National Minority Supplier Development Council Business Consortium Fund, Inc., plaintiff.

Christopher B. Bacon, Lowe, Farmer, Bacon & Roe, Olathe, KS, for First National Bank of Olathe, defendant.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

This is a contract dispute related to the proper allocation of funds collected from a third party after default on certain loans. Now before the court are two motions: Plaintiff's Second Motion for Partial Summary Judgment (Doc. 52), and Defendant First National Bank of Olathe's Second Motion for Partial Summary Judgment (Doc. 54). For the reasons set forth below, both motions are granted.

### I. FACTS

The facts in this matter are not in dispute. On September 3, 1996 defendant, First National Bank of Olathe (Bank), made a $375,000 loan, due September 5, 1997, to Hybrids International, Inc. (Hybrids). Plaintiff National Minority Supplier Development Council Business Consortium Fund, Inc. (BCF) purchased a 100% participation interest in this loan pursuant to a Loan Participation Agreement between Bank and BCF executed on September 4, 1996. Terms of the Loan Participation Agreement (LPA) are discussed below as they become relevant.

Under two pre-existing non-participating loans from Bank to Hybrids, Hybrids granted security interests in its inventory, equipment, furniture, fixtures, accounts receivable and general intangibles to Bank. Collateral securing the LPA was defined as all inventory of Hybrids and a junior lien on accounts receivable, furniture, equipment, fixtures and general intangibles.

Hybrids defaulted on all three loans on July 31, 1997. Bank received monies from Hybrids customers through a pre-existing lockbox arrangement whereby Bank received payments on Hybrids accounts receivable.[1] Bank applied the monies received through the lockbox to the non-

---

1. BCF does not controvert or deny the statement that the lockbox arrangement was preexisting, rather it objects to the statement as irrelevant. Reply to Def.'s Mem. in Opposition to Pl.'s Second Mot. for Partial Summ.J. (Doc. 62 at 2). The Court views the statement in the light most favorable to Bank as the nonmoving party.

participating loans first. Consequently the non-participating loans were paid off before November 11, 1997. The participating loan has not been satisfied.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

## III. DISCUSSION

### A. Apportionment of Proceeds Among All Loans

In a prior order this Court denied Bank's motion for summary judgment in which Bank asserted the participation agreement does not require that proceeds from Hybrid's accounts receivable be apportioned between the participating and non-participating loans. In its order the Court reasoned "if the participation agreement allows Bank to avoid apportionment, it does so only ambiguously." (Doc. 44 at 6). Because BCF did not seek summary judgment on the issue, the Court was not required to determine if the LPA was ambiguous. (Doc. 44 at 4). BCF has now made a motion for summary judgment asserting that the LPA requires apportionment of proceeds from Hybrid's accounts receivable based upon the relative unpaid balances of the loans. The Court now considers whether the LPA is ambiguous.

Bank argues that a proper understanding of Sections 8(e) and 13.C.5. of the participation agreement requires accounts receivable proceeds to be credited to the non-participating loans made by Bank and that only excess amounts be credited to the junior interest created by the LPA. Alternatively, Bank argues that the intent of the LPA sections is ambiguous and is, therefore, a question of material fact precluding summary judgment.

BCF argues that the LPA is not ambiguous and that Sections 8(e)(1) or (2) of the LPA require that any payments or collec-

tions made after July 31, 1997 must be apportioned between the loans.

### 1. Applicable Law

■■■■ In construing a contract the intent of the parties controls. The Court determines the parties' intent by examining the four corners of the document, looking to all sections rather than to a critical analysis of any isolated provision. *See Akandas, Inc. v. Klippel,* 250 Kan. 458, 464–65, 827 P.2d 37, 44 (1992); *Wiles v. Wiles,* 202 Kan. 613, 620, 452 P.2d 271, 277 (1969). The Court must attempt to give effect to all provisions of the contract. *See Wiles* at 619, 452 P.2d at 276. Where the contract is clear and unambiguous there is no need to apply rules of construction. *See Desbien v. Penokee Farmers Union Coop.,* 220 Kan. 358, 363, 552 P.2d 917, 923 (1976). Ambiguity is a question of law to be determined by the court. *See Simon v. National Farmers Org., Inc.,* 250 Kan. 676, 680, 829 P.2d 884, 888 (1992).

> To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it uncertain which one of two or more meanings is the proper meaning.

*Id.* (Citation omitted).

### 2. Apportionment Requirement

■■■ The Court finds the following provisions of Section 8(e) of the LPA to be clear and controlling in this case.

> 8(e): To the extent that any payments by [Hybrids] to the Bank are insufficient to pay in full the amounts then due and owing under the Loan and any other loan, ... then, ... it is expressly understood as follows:
>
> · (1) The amounts received by the Bank, which may constitute payment of either the Loan or any other loan, ... shall be apportioned between the Loan and such other loans in propor-

tion to the respective balances then due and owing under each loan;

> (2) The occurrence of an Event of Default, under either the Loan or any other loan, and the decision ... that said loan shall be collected, ... then ... the same action shall be taken by the bank with respect to each such loan, and the proceeds of collection, ... shall be first allocated between the Loan and any other loan, based upon the outstanding balances owed under each such loan.

(Doc. 53, Ex. A).

The payments under the lockbox arrangement were insufficient after July 31, 1997 to pay in full the amounts due and owing under the participating loan and the non-participating loans. Consequently, section 8(e) applies. Under 8(e)(1) the amounts received which "may constitute payment ... of any other loan ... **shall** be apportioned." The payments under the lockbox arrangement were, in fact, payments which had been used and continued to be used after July 31, 1997 as payments on the non-participating loans. Therefore, the payments "may constitute payment of ... any other loan" and must be apportioned between all three loans.

In its prior order, this Court determined that the participating loan was in default as of July 31, 1997. Bank would be incorrect to argue that because the lockbox arrangement was continuing there was no decision to collect on the non-participating loans. In fact, every time the lockbox was opened and monies applied Bank made a decision to collect on the non-participating loans. Section 8(e)(2) requires that, where a decision is made to collect any loan in default, the Bank take the same action with respect to each loan and the proceeds be allocated between the loans. Bank did not allocate the proceeds of collection between the loans. Under either Section 8(e)(1) or (2) the proceeds of collection or payment must be apportioned among the three loans. The Court finds the Collateral priority implied in Section 13.C.5. of the

Loan Participation Agreement does not relate to proceeds of collection or payment.

### 3. Collateral for the Participating Loan

■■■ Bank argues that Section 13.C.5. of the LPA is controlling here because specific provisions control over general provisions and because language typed into a contract prevails over printed language of the contract. The Court agrees with Bank's statement of the rules. Such rules will only be applied, however, if the contract is ambiguous on its face, or if the meaning is not clear from a plain and natural reading. The Court finds no ambiguity requiring application of rules of construction.

Section 13.C. contains "Financial Information" such as loan amount, purpose, type, interest rate and "Collateral/Security." Section 13.C.5. lists the Collateral as:

All inventory of the borrower and a junior lien on accounts receivable, furniture, fixtures, equipment and general intangibles.

\* not withstanding (sic) anything contained herein to the contrary, . bank agrees to subordinate its existing lien on inventory to that of BCF.

(Mem. in Supp. of Pl.'s Second Mot. for Partial Summ.J., Doc. 53, Ex. A).

Bank appears to argue that because the Collateral interest in property other than inventory is a junior lien, proceeds from that collateral must first be applied to the senior interest—Bank's interest in the non-participating loans.

Section 13.C. does not address how proceeds from collateral are to be handled or applied to the loans. It merely lists the collateral and indicates that the collateral on the participating loan includes the junior liens. From the asterisked language one might infer that the apportionment requirement contained in Section 8(e) of the contract does not apply to proceeds from the **inventory.** But, as to the junior lien collateral which is **not** excepted, the inclusion of the asterisked language is an indication that all provisions of the participation agreement including the apportionment requirement of Section 8(e) apply.

### B. Attorney Fees

The Bank argues that attorney fees are not recoverable for two reasons. First, fees are not recoverable because there exists no express contractual or statutory authority. Second, fees are not recoverable in an action seeking to establish an indemnification agreement unless specifically provided in the agreement. BCF counters that the language of the participation agreement is broad enough to constitute express contractual authority for recovery of attorney fees and that attorney fees are recoverable in an enforcement action such as this.

### 4. Applicable Law.

■■■ Under Kansas law, which the parties agree controls this case, attorney fees are recoverable only where there exists statutory authority or express contractual language. *See Chetopa State Bancshares, Inc. v. Fox,* 6 Kan.App.2d 326, 333, 628 P.2d 249, 256 (1981). The general rule is that attorney fees are not recoverable in suits to enforce an indemnity agreement. *See id.* at 327, 628 P.2d at 251. In *Bancshares* the Kansas Court of Appeals determined that attorney fees are recoverable in suits to enforce an indemnity agreement if there is express contractual language to that effect. *See id.* at 333–34, 628 P.2d at 256.

In *Bancshares* the appellate court found that the indemnification clause authorizing attorney fees in the enforcement action contained "express contractual language." *See id.* at 333, 628 P.2d at 255–56. That clause covered "any loss, damage, deficiency or expense (including reasonable attorney's fees) suffered or incurred." *See id.* at 327, 628 P.2d at 251. Whether the 'attorney's fees' language of the indemnification clause in *Bancshares* was essential to finding "express contractual language" was not stated by the court, and may

reasonably be inferred from the courts use of the term 'express.'

Black's Law Dictionary defines "express:"

Clear; definite; explicit; plain; direct; unmistakable; not dubious or ambiguous. Declared in terms; **set forth in words.** Directly and distinctly stated. Made known distinctly and explicitly, and not left to inference. [Citation omitted.] . . . The word is usually contrasted with "implied."

BLACK'S LAW DICTIONARY 580 (6th ed.1990) (emphasis added).

If the 'attorney fees' language were not included in an indemnification clause, it would not be "set forth in words," and could only be implied by language such as 'any expense.' Therefore, it is reasonable to find that the court's use of the term "express contractual language" requires inclusion of words referring to 'attorney fees.'

### 5. Express Contractual Language

▮ The parties' memoranda in this case demonstrate that courts are divided on what contractual language is required to recover attorney fees. Some courts find broad indemnification language that does not state 'attorney fees,' will not allow recovery of fees. *See e.g., Wolf v. Mutual Benefit Health & Accident Ass'n,* 188 Kan. 694, 700, 366 P.2d 219, 224 (1961);[2] *Moore v. Williams,* 902 F.Supp. 957, 965 (N.D.Iowa 1995);[3] *Barber Blue Sea v. Trailer Marine Transp. Corp.,* 725 F.Supp. 1220, 1221 (S.D.Fla.1989). Other courts find broad indemnification language that does not state 'attorney fees,' allows recovery of attorney fees. *See e.g., Leonard v. Aluminum Co. of America,* 767 F.2d 134, 137 (5th Cir.1985), *vacated on*

*reh'g,* 800 F.2d 523 (1986)[4]; *Brown v. Seaboard Coast Line R.R.,* 554 F.2d 1299, 1304 (5th Cir.1977); *Bolfa v. Pool Offshore Co.,* 623 F.Supp. 1177, 1181 (W.D.La.1995); *United States v. Hardy,* 916 F.Supp. 1385, 1390–92 (W.D.Ky.1996).[5]

The participation agreement involved here states:

14. Indemnification: The Bank agrees to indemnify and hold BCF harmless from any and all liabilities, claims, obligations, losses, actions, judgements (sic), suits, settlements and expenses of any kind resulting from the banker's or its employee's negligence, fraud, theft, incorrect calculation, or mistake in the transfer and/or disbursement of funds related to the BCF.

(Doc. 53, Ex. A).

The agreement contains no 'attorney fees' language. The Kansas Supreme Court has not considered whether 'attorney fees' language is necessary before an indemnification agreement will allow recovery of attorney fees. The court has considered the issue as it relates to statutory authority for 'attorney fees.' *See Wolf* at 700, 366 P.2d at 224. The court stated:

Ordinarily the term "costs" and "expenses" as used in a statute are not understood to include attorney fees. At common law the right did not exist to recover attorney fees from one's opponent in litigation as a part of the costs. Therefore, the allowance of attorney fees as part of the costs of an action is dependent upon statutory authority expressly conferring the power to allow them.

*Id.* (*citing Vonachen v. Independent Lumber Co.,* 172 Kan. 545, 241 P.2d 775 (1952)).

---

2. *Wolf* does not refer to contractual language at all, but considers statutory construction of such language.

3. *Moore* states the rule that 'attorney fees' language is required, and then allows recovery based upon 'attorney fees' language included in the agreement.

4. Although vacated, the *Leonard* opinion is typical of the rationale used.

5. The ruling in *Hardy* is premised upon Kentucky law, which allows recovery of attorney fees when a party breaches his duty to defend, rather than on any particular language in the indemnity agreement at issue. *See Hardy* at 1391–92, n. 5.

That court allowed recovery of attorney fees based upon a statute that contained the words 'attorney's fee.'

Considering the Kansas courts' rationale in applying statutory authority, and their use of the term "express contractual language," this Court finds that Kansas law requires that express language beyond general terms referring variously to expenses is necessary to allow recovery of attorney fees.

BCF argues that the United States District Court for the District of Kansas recently held that broad language of indemnification was sufficient to permit recovery of attorney fees even if the 'attorney fees' language had not been in the indemnification provision. *See Oakview Treatment Centers of Kansas, Inc. v. Garrett,* 53 F.Supp.2d 1184 (D.Kan.1999).

In *Oakview* the indemnification agreement included 'attorney fees' language, and the court held that the language was sufficient to allow recovery. *Oakview* at 1194. The court's decision that 'attorney fees' language was not required, was unnecessary; and not essential to the holding in that case. Therefore, the court's holding as to the 'attorney fees' language is considered dicta by this court.

This Court does not chose to follow the *Oakview* court's interpretation of *Missouri Pacific R.R. v. Kansas Gas & Elec. Co.,* 862 F.2d 796, 797, 801 (10th Cir.1988). *See Oakview* at 1194. The agreement in *Missouri Pacific* indemnified the railroad "from and against, any and all liability, suits, claims, damages, costs (**including attorneys' fees**), losses, outlays and expenses in any manner caused by, arising out of or connected with the failure or refusal ... to comply." *Missouri Pacific* at 797 (emphasis added). Upholding the award of attorney fees, the *Missouri Pacific* court stated:

Paragraph three of the [Industrial Track Agreement] **expressly includes attorneys' fees as part of the costs** for which KG & E is responsible. KG & E agreed to indemnify MoPac for all damages, costs, and **fees** 'arising out of or connect-

ed with' KG & E's failure to keep the sidetrack clear and passable.

*Id.* at 801 (emphasis added).

The *Oakview* court based its finding on the premise that

The [*Missouri Pacific*] Court did not mention the express attorneys' fee clause, and it relied upon a case which allowed attorneys' fees under the phrase any and all loss, cost, damage and expense with no other mention of attorneys' fees.

*Oakview* at 1194 (citing *Missouri Pacific* at 801).

To the contrary, although the *Missouri Pacific* court did, indeed, cite a case allowing recovery of attorney fees based upon broad indemnification language, it relied primarily on the 'attorneys' fees' clause in the agreement at issue. *See Missouri Pacific* at 801 (citing *Brown v. Seaboard Coast Line R.R.,* 554 F.2d 1299, 1304 (5th Cir.1977)). An examination of the indemnification agreement in *Missouri Pacific* reveals that the **only time** 'fees' occurs in the indemnification agreement at issue is in the 'attorneys' fees' clause. The *Missouri Pacific* court mentioned the 'attorneys' fees' clause twice in its holding, once expressly by name, and once in its mention of fees. This Court finds the *Missouri Pacific* court rested its holding to a great extent, if not exclusively, on the inclusion of the 'attorneys' fees' clause in the indemnification agreement.

### 6. Recovery in an Enforcement Action

The participation agreement does not provide for recovery of attorney fees incurred in an action to establish the indemnity agreement. Reduced of all unnecessary language the agreement provides that Bank will indemnify BCF "from any and all [losses or expenses] resulting from [Bank's actions or omissions to act] in the transfer or disbursement of funds related to BCF." The attorney fees in this suit, even if implied by the broad indemni-

fication language at issue, do not result from Bank's actions or omissions **in the transfer or disbursement of funds related to BCF.**

The broad indemnification language at issue here does not specifically mention indirect expenses or costs. Bank's alleged improper transfer or disbursement of funds resulted in the loss of ·credits to the participating loan, but did not directly result in attorney fees. The attorney fees incurred in this suit are not the direct result of Bank's actions or omissions in handling funds. Rather they are an indirect result occasioned by BCF's decision to seek judicial enforcement of its understanding of the LPA.

In *Signal Oil & Gas Co. v. The Barge W-701*, 654 F.2d 1164, 1179 (5th Cir.1981), the court affirmed denial of a request for attorney fees incurred in establishing plaintiff's right to indemnification. The court noted that recovery is not generally allowed for expenses incurred in establishing the right to indemnification. *Signal Oil* at 1178 (citing *Vallejos v. C.E Glass Co.*, 583 F.2d 507, 510 (10th Cir.1978)). The court "decline[d] to hold it within the contemplation of the contracting parties that the indemnitor would have to be taken to court to insure satisfaction of his agreed upon payment." *Signal Oil* at 1179.[6] Absent "express contractual language" to the contrary this court likewise declines.

Each party is responsible for his own attorney fees unless authorized by statute or express contractual language. The indemnification agreement at issue does not authorize recovery of attorney fees by express contractual language, nor in an action to establish the agreement.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Second Motion for Partial Summary Judgment (Doc. 52), and Defendant First National Bank of Olathe's Second Motion for Partial Summary Judgment (Doc. 54) are granted.

**IT SO ORDERED.**

---

**6.** BCF cited *Signal Oil* for the proposition that "[t]he Fifth Circuit granted the plaintiffs their attorney fees for both the tort action **and the action to· enforce the indemnity agree-** ment." (Doc. 61 at 7) (emphasis added). The *Signal Oil* court concluded otherwise. *Signal Oil* at 1179.